McCARTNEY *v.* MERCHANTS AND PLANTERS BANK.

5-1047                                             296 S. W. 2d 407

Opinion delivered December 10, 1956.

*Kaneaster Hodges,* for appellant.

*Fred M. Pickens, Jr.,* for appellee.

ED. F. McFADDIN, Associate Justice. The question here posed is whether the Probate Court abused its discretion in appointing the appellee Bank as guardian of the person and estate of Mrs. Edith Dollman, an incompetent lady of middle age.

The appellant — a sister of Mrs. Dollman — sought to be appointed; an adopted son of Mrs. Dollman also sought to be appointed; the Court, on its own motion, appointed the appellee Bank; and appellant brings this appeal listing three points for reversal:

"(1) Section 57-608 of the Arkansas Statutes gives preference in the appointment to the relatives of the ward by blood or marriage.

"(2) The welfare and best interests of the ward require the appointment of the petitioner, Mrs. Ray McCartney.

"(3) It was an abuse of discretion, assuming there was such in the court, to appoint a stranger as guardian of the person and estate in preference to a qualified blood relative under the circumstances of this case."

I. *Appellant's Points 1 And 3 — Statutory Preference And Court's Discretion.* It is unnecessary to give all the details about the life of the unfortunate lady, who is a hopeless mental case and has been for many years. The appellant is her sister and over all the years has shown continuous loving care for the afflicted lady. On the other hand, the adopted son has let years pass without seeing his mother or inquiring of her condition. As between the appellant and the adopted son, the appellant is infinitely better qualified to be appointed. When the Chancellor was faced with this dispute between the sister and the adopted son, the Chancellor selected the appellee as a neutral third party; and appellant says this violates the statutory preference given relatives.

Our statute on preference in granting letters of guardianship is found in § 57-608 Ark. Stats. The statute gives a preference to the parents of an unmarried minor, and then says: ". . . the Court shall appoint as guardian of an incompetent the one most suitable who is willing to serve, having due regard to . . . (d) the relationship by blood or marriage . . ." It will be observed that the quoted statute does not make an ironclad order of priority in a situation like the one here: rather, the statute leaves it to the Court to select that person as guardian, the appointment of whom would be for the best interests of the incompetent. Appellant relies on the case of *McLain* v. *Short,* 144 Ark. 600, 224 S. W. 428; but that case involved the guardianship of minors as between a grandparent and a stranger; also it was decided before the passage of our present statute, which is Act No. 140 of 1949. In short, we hold that the appellant had no statutory preference in this case.

This holding also disposes of appellant's third point regarding the abuse of discretion. Since the statute gave no ironclad order of preference, the Court was, of course, authorized to exercise its discretion in selecting a guardian, having in mind always the best interests of the ward; and, unless it be shown that the Court was in error in determining the best interests of the ward, then there was no abuse of discretion.

II. *Appellant's Point 2 — Welfare And Best Interest Of The Ward.* We reach the conclusion that the Probate Court did not abuse its discretion in the appointment of the appellee. There was a sharp dispute between two relatives — a sister and an adopted son; and the Chancellor had the right to select a neutral third person.[1] In 25 Am. Jur. 23, the general rule is stated:

"Subject to statutory restrictions, the selection of the person to be appointed guardian is a matter which is committed largely to the discretion of the appointment court, and an appellate court will interfere with the exercise of this discretion only in case of a clear abuse."

In 21 A. L. R. 2d 880 there is an annotation entitled: "Priority and preference in appointing guardian of an incompetent." It is there recognized as a general rule:

"Consanguinity is considered a recommendation in the selection of a guardian for an incompetent, and will not be disregarded except upon strong grounds, the presumption being that the next of kin of the incompetent will be more likely to treat the latter with patience and

---

[1] In making his decision, the Chancellor said: "This seems to be a family argument, and you have introduced a long and imposing array of outstanding business men of the community, and they all say — and I have listened closely to their testimony, and they all say — that both of these petitioners here would be, according to their opinions, capable, competent and fit to manage the estate and property involved in this action.

"However, I have always found that particularly in *non compos mentis* cases a bank has a great many advantages over an individual in that it is at all times impartial and in the estate it has the advantages of the business acumen; and in view of the fact that . . . both sides of the house of the estate do business with the Merchants and Planters Bank that bank will be appointed.

affection than will a stranger; so, the usual practice is to appoint as guardian of the incompetent one of the next of kin or other close blood relatives, or their nominee, or at least to consider them seriously in making the appointment.''

But, after stating the general rule as above quoted, the annotation cites many cases to sustain the following as a limitation on, or qualification of, the general rule:

''As intimated above, the court is not necessarily bound to appoint next of kin or close relatives or the nominees of such blood relatives, for the court, keeping in mind the principle of law that the best interests of the incompetent are paramount, may, in the exercise of the discretion confided in it with respect to the appointment of guardians, appoint a stranger where to do so would be for the best interests of the incompetent in view of such factors as the adverse interests of the relatives and the incompetent, lack of business ability of the relative, and various other matters further to be noted.''

The record here reflects that Mrs. McCartney has, over the years, looked after her unfortunate sister. The supervisor of the institution where the lady is being treated testified that Mrs. McCartney made regular visits and that the incompetent sister loved such visits and looked forward to them. The former guardian admitted that he relied on Mrs. McCartney's advice and counsel; and all of the testifying brothers and sisters of the incompetent preferred Mrs. McCartney and stated that she was the one that had really best looked after the incompetent during the years. So, if Mrs. McCartney should desire to be named guardian of the person of her sister, this present proceeding would not be an absolute bar to

"MR. HODGES: Your Honor, does that mean of the person?
"THE COURT: It has been handled that way with Mr. Ben White. I don't think the Bank would have any objection. I don't know where there would be any conflict. I do not know whether it would be an advantage or a disadvantage to have someone appointed as personal guardian; but if Mrs. McCartney would like to be appointed guardian of the person, that could be done.
"MR. HODGES: We are not amending our request. We are just asking the Court to clarify its finding. You will please note our objections and exceptions to the ruling, and we pray an appeal to the Supreme Court of Arkansas."

such application: the matter will then be open for the Probate Court to decide in its discretion. The point is: we cannot say that the Probate Court was in error in deciding this case as it did under all of the facts and circumstances disclosed by this record and in view of the sharp contest between the appellant and the adopted son of the incompetent lady.

Affirmed.