Ernest Ray BENNETT and Theodora V. BENNETT *v.*
Robert Bruce McGOUGH and Vera Joyce McGOUGH

83-237                                              664 S.W.2d 476

Supreme Court of Arkansas
Opinion delivered February 21, 1984

*Reed & Irwin, P.A.,* for appellants.

*Olmstead & Choate, Ltd.,* by: *Stephen Choate,* for appellees.

RICHARD B. ADKISSON, Chief Justice. On September 12, 1982, the Parker family was involved in an automobile accident. Both parents died as a result of injuries sustained in the accident. The children, Marsha and Melanie, were injured but eventually recovered. Appellees, Robert and Vera McGough, friends of the family, were appointed temporary guardians of the minor children.

On March 10, 1983, appellees petitioned the court for appointment as permanent guardians. On March 21, 1983, appellants, Ernest and Theodora Bennett, the children's maternal grandparents by consanguinity and affinity respectively, responded to appellees' petition and asked that they be appointed permanent guardians of the children. On May 23, 1983, the probate court appointed the McGoughs as permanent guardians of the persons and estates of the children and found:

> . . . That there is no statutory preference given to either of the petitioning parties to this action. That, after giving due regard to Ark. Stat. Ann. § 57-608 (Repl. 1971), the Court finds that it would be in the best interest of the minor children to remain with the McGoughs as they have demonstrated to the Court's satisfaction that they have the best interest of the children in mind and that they have in the past demonstrated their ability to care for the children.

Appellants argue for reversal that Ark. Stat. Ann. § 57-608 (Repl. 1971) grants a preference to relationships by blood or marriage and that the trial court erred by not giving proper effect to this statute which provides:

> Preference in granting letters. — The parents of an

unmarried minor, or either of them if qualified and in the opinion of the court suitable, shall be preferred over all others for appointment as guardian of the person. Subject to this rule, the court shall appoint as guardian of an incompetent the one most suitable who is willing to serve, having due regard to: a) any request contained in a will or other written instrument executed by the parent for the appointment of a person as guardian of his minor child; b) any request for the appointment of a person as his guardian made by a minor of the age of fourteen [14] years or over; c) any request for the appointment of a person made by the spouse of an incompetent; d) the relationship by blood or marriage to the person for whom guardianship is sought.

Although courts generally appoint relatives on the theory that they will be more solicitous of the ward's welfare, this is not mandatory. The quoted statute is couched in such terms as to allow the court to exercise its sound discretion and *only* grants a preference to the parents of a minor. Any inclination to appoint a relative must necessarily become subservient to the principle that the child's interest is of paramount consideration. The lower court need only give "due regard" to those factors listed in Ark. Stat. Ann. § 57-608.

Appellants next argue that there was insufficient evidence to support the finding of the trial judge that it was in the best interest of the children to be placed in the custody of the appellees. On appeal this court does not weigh the evidence or pass on the credibility of the witnesses. *Kirk* v. *City of Little Rock,* 275 Ark. 128, 628 S.W.2d 21 (1982). But in reviewing the evidence we will not reverse unless we can say that the findings of the trial judge were clearly against the preponderance of the evidence.

The record reflects that after the accident the appellees took the children into their home and cared for them continuously after their release from the hospital in September 1982 and that, before the accident, appellees had taken good care of the children for extended lengths of time

when the parents were financially unable to provide for them. Furthermore, other witnesses' testimony indicated that on numerous occasions the parents of the minor children had expressed a desire for the McGoughs to have custody of the children if anything ever happened to them. Appellants, on the other hand, did not visit the children after the accident or check to see if their needs were being provided until just before the time of the hearing below. Under the circumstances of this case we are unable to say that the probate court erred in its ruling.

Appellants further argue that the trial court erred in failing to make specific findings of fact as to why it did not give custody of the children to the grandparents, and in so arguing, appellants utilize an analogy between Ark. Stat. Ann. §§ 34-1214 (Supp. 1983) and 57-608. Section 34-1214 requires a court to enter specific findings of fact upon making other than a one-half distribution of property to each of the parties in a divorce. This requirement for specific findings was placed upon the courts by the General Assembly. No such requirement has been placed upon a probate judge when he is dealing with a guardianship under § 57-608.

Finally, appellants argue that the trial court erred in failing to order the appellees to post bond in accordance with Ark. Stat. Ann. §§ 57-616 and 57-617 (Repl. 1971). The purpose of a guardian's bond is to preserve the estate of the ward. The legislature provided alternative measures for preservation of the ward's estate in § 57-617. This section provides that no bond is necessary where the ward's estate consists entirely of cash and where the guardian deposits the funds in a federally insured lending institution which has previously agreed not to permit any withdrawal except on approval of the probate court. The lower court utilized this statute in the present situation, therefore, we do not find an error in not requiring the appellees to post a bond.

The probate court is affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. The majority opinion goes too far to uphold a chancellor (serving as probate judge here) in my opinion. I agree we should uphold them unless they are clearly erroneous. In this case the chancellor and the majority of this court are clearly erroneous, in my opinion. The majority state: "The lower court need only give 'due regard' to those factors listed in Ark. Stat. Ann. § 57-608 . . ." The trial court held:

> That there is no statutory preference given to either of the petitioning parties to this action. That, after giving due regard to Ark. Stat. Ann. § 57-608 (Repl. 1971), the court finds that it would be in the best interest of the minor children to remain with the McGoughs . . ."

Both courts give "due regard" to the statute. The best I can figure is that "due regard" in this case means to ignore it. The statute is correctly stated in the majority opinion. The effect of the opinion is to ignore all of the statute except the first sentence. The courts are mandated by the statute to select a guardian who is suitable and willing to serve, but in addition they are required to give due regard to "the relationship by blood or marriage to the person for whom guardianship is sought." I do not think this charge is meaningless.

In addition to the statute requiring preference to the appellants in this case I have even a much stronger reason to prefer them: the appellants are the grandparents of these minor children. I believe public policy demands that grandparents and other close relatives be given priority in this type guardianship. In *Lee* v. *Grubbs,* 269 Ark. 205, 599 S.W.2d 715 (1980) we approved the natural father of an illegitimate child as guardian with these words: "If a guardian is to be appointed, the natural father should have some preference over others, unless he is unfit."

The majority rely upon *McCartney* v. *Merchants and Planters Bank,* 227 Ark. 80, 296 S.W.2d 407 (1956). There the court awarded guardianship to a bank because feuding relatives created an unfortunate situation. In citing Ark. Stat. Ann. § 57-608 the court stated: "It will be observed that

the quoted statute does not make an ironclad order of priority in a situation like the one here." This language clearly implies that relatives should be given priority. No one would argue that there are not circumstances when certain relatives would not be suitable and willing. Generally speaking, relatives of minors care for and are genuinely interested in their welfare.

The grandfather, age 52, and his wife, age 43, own a three bedroom brick home in Tucson where most of these children's relatives also live. He earns take home pay of $1,600 per month and these children would become covered under his insurance and would qualify for other benefits. The grandparents did visit. Susie, these children's mother, lived in Tucson with her parents prior to moving to Arkansas. When she was released from the Fayetteville hospital after the accident she was taken back home to Tucson where she died. These children were there with the grandparents at that time. The guardians in this case filed papers while the children's mother was still in the Fayetteville hospital. Mrs. McGough told one of the blood relatives that she never wanted to hear the voice of any member of the children's family again. Of course the McGoughs filed papers to receive the insurance money which was to be paid to the children on account of their parents' deaths. Also, they are receiving the social security checks for the little girls. The grandparents had visited with the children in February, 1983, and again in May, 1983, at which time the girls inquired whether all the family in Tucson were "drunks" or "crooks." The McGoughs, who have no children of their own, were married for a second time in 1981. This was for appearance sake as they were already living together. He changes jobs frequently and moves his mobile home from place to place. He has taken bankruptcy. There was testimony to the effect that the McGoughs drank a lot and smoked pot. After the $300,000 was paid into the registry of the court these guardians started talking about adopting these children. Now they will do so and the grandparents' rights will forever be lost as to these two granddaughters.

I think the reasoning in *McLain* v. *Short,* 144 Ark. 600,

224 S.W. 428 (1920) is still sound law. A grandfather and a stranger were seeking appointment as guardian and the stranger won. In reversing the court stated: (p. 603)

> So far as the record discloses, both appellant and appellee are proper and suitable persons to be appointed guardian over said minors. Appellant is of blood kin, — their own grandfather; appellee is of no blood kin, and, save the distant relationship of affinity, is what the law terms a stranger. All other things being equal, the general rule of law is that the next of kin, rather than strangers, are preferred as guardians over children.

In my opinion the advent of the probate code had no effect upon this established rule of law. Had there been a showing that the grandparents were unfit, my opinion would have been that of the majority. If there is now no statutory preference for grandparents, does that indeed not place us in the same position the court was in when McLain was decided?

I would reverse and remand for the purpose of awarding guardianship to the grandparents in the absence of some factor tending to show the grandparents are not suitable.