Paul MARSH and Renee MARSH *v.* Richard HOFF

CA 84-417                                    692 S.W.2d 270

Court of Appeals of Arkansas
En Banc
Opinion delivered July 3, 1985

*Guy Jones, Jr., P.A.,* for appellant.

*Hardin & Hardin,* for appellee.

JAMES R. COOPER, Judge. This is an appeal from the decision of the Faulkner County probate court denying the appellants' petition for guardianship of a minor child, Christina Hoff, and ordering her return to her natural father, the appellee. The appellants also appeal from the trial judge's decision holding their attorney in contempt. They further contend that the trial judge should have recused on his own motion. We reverse and remand as to the guardianship petition, affirm as to the contempt, and find it unnecessary to reach the issue of the trial judge's recusal.

The appellant Paul Marsh is Christina's half-brother, and Renee Marsh is Paul's wife. Christina, who was ten years old at the time of trial, is the natural child of the appellee and Helen Hoff, who died in May, 1983, after a lengthy illness. Helen Hoff and the appellee were divorced in 1978, and custody was placed in Helen.

When the seriousness of Helen's illness became apparent, she placed Christina with a friend, Vivian Lewis. The appellee removed the child from Ms. Lewis' custody in December, 1982. In August, 1983, after the appellee was stricken with Guillain-Barre syndrome and was hospitalized, the appellants took Christina into their home. The record shows that both moves were at the child's request. In November, 1983, the appellants obtained an *ex parte* order which granted them a temporary guardianship over Christina. On March 26, 1983, the trial was held, and the probate judge took the matter under advisement,

pending receipt of home studies to be conducted by the Arkansas Department of Social Services. (Those reports, though received by the trial judge, and apparently considered by him, are not part of the record.) On May 10, 1983, the court, in a letter opinion, acknowledged receipt of the home studies, and denied the appellants' petition, finding that it was in the best interest of the child to be placed with her natural father. The court ordered that she be delivered to her father on May 25, 1983. The court found that Christina should be placed under a protective order with social services and further detailed the manner in which the child's social security benefits were to be expended. Although the order does not contain any reference to the appellee's live-in girl friend, the letter ruling indicated that the court intended that such a living arrangement end.

We review probate proceedings *de novo*, reversing the probate judge's decisions on factual matters only if they are clearly erroneous. *Rose* v. *Dunn*, 283 Ark. 42, 679 S.W.2d 180 (1984). The probate court has discretion in determining whom to appoint as guardian of a minor, and the court's action will not be overturned except in a case of manifest abuse. *Knight* v. *Deavers*, 259 Ark. 45, 531 S.W.2d 252 (1976); *Monroe* v. *Dallas*, 6 Ark. App. 10, 636 S.W.2d 881 (1982). In this case we find that the trial judge abused his discretion in placing Christina with her father, and therefore we reverse.

Renee Marsh testified that the appellee's living conditions were filthy; she saw dirty clothes and dishes scattered about and little furniture in the house. The appellee acknowledged that Ms. Marsh's description could be accurate, but that he did not know since he was not present when Ms. Marsh was in the home. He testified that the residence was now clean. Christina testified that the house was filthy and roach-infested; she was forced to wear stained clothing; and she had to bathe in a nearby creek because the bathroom was not fit to use and there was no hot water. Mr. Hoff testified that the bathroom problem had been remedied. Christina also testified that some of her meals consisted of vegetables which had been retrieved from dumpsters located behind area businesses and that she had to eat such food or starve.

It is undisputed that Mr. Hoff had a live-in girlfriend named Cheeta Smith at the time of the hearing. She, along with her

twenty-year-old son and sixteen-year-old daughter, had resided with the appellee for two and one-half years. The appellee indicated that he had no intention of marrying Cheeta, and that he saw nothing wrong with such an arrangement. He did indicate that if the judge desired, he would either move Cheeta out or marry her. Christina testified that Cheeta was dirty, cursed her frequently, and threatened her on occasion, and in the eight months Christina lived with her father, Cheeta prepared only about eight meals.

The appellee is totally disabled because of a knee and back injury and because of the Guillain-Barre disease, which is a disease of the central nervous system. He testified that he had the time and the ability to care for Christina, but he also admitted that taking care of his own needs and doing his rehabilitative exercises takes up all of his time. He testified that Cheeta did all of the household chores and that, if she were to leave, he would have to perform those tasks.

The paramount consideration when appointing a guardian for a child is the best interest of the child. *Bennett* v. *McGough*, 281 Ark. 414, 664 S.W.2d 476 (1984). The parental preference provided for in Ark. Stat. Ann. Section 57-608 (Repl. 1971) is only one of the factors to be considered by the court in determining who would be the most suitable guardian. *Monroe*, 6 Ark. App. at 11-12. While the investigative home studies were requested, completed, and returned to the trial court, they are not part of the record. Therefore, we will not consider the excerpt included in the appellee's brief. *State Farm Fire and Casualty Insurance Co.* v. *Mobley*, 5 Ark. App. 293, 636 S.W.2d 299 (1982).

The trial court stated, and the record shows, that the appellants can provide Christina with a much more pleasant life than can her father. According to Ms. Lewis, Mr. Marsh and Christina had a close relationship and that they had been raised together. Christina had not lived with her father for any extended period of time after the divorce until he took her from Ms. Lewis' home in December, 1982. The record shows that both of the appellants care for Christina; they take a strong interest in her school work; they discipline her when necessary; and they provide suitable care for her when their respective work schedules

overlap. Christina testified that she preferred to live with the appellants rather than with her father. While it is not controlling, a child's preference is to be considered in determining custody. *Page* v. *Page*, 210 Ark. 430, 196 S.W.2d 580 (1946). The only negative factors in granting the guardianship to the appellants is their age, he being 18 at the time of trial, and his wife 21.

After viewing the evidence in its entirety, giving due regard to the trial court's ability to determine the credibility of the witnesses, ARCP Rule 52(a), we hold that the clear preponderance of the evidence of record shows that Christina's best interests will be served by granting the guardianship petition filed by the appellants.

We do agree with the probate judge that Christina needs to be reacquainted with her father. Therefore, on remand, we direct that the probate judge take into account the present circumstances of the parties and set visitation accordingly. Also, we agree with the probate judge's determination that controls need to be placed on the expenditure of Christina's social security benefits. Therefore, on remand, we direct that the probate judge establish appropriate safeguards regarding those funds.

As to the issue of the citation of the appellant's attorney for contempt, we have serious doubts as to its validity, inasmuch as Christina was delivered to her father on May 25, 1983, the date the appellants were ordered to deliver her. However, this issue is not properly before this Court. The appellants are not the aggrieved party in the contempt action; their attorney is the party who was held in contempt. Only a party aggrieved by the court's order can appeal that order. *Beard* v. *Beard*, 207 Ark. 863, 183 S.W.2d 44 (1944). The appellants, having been absolved of the contempt charge, cannot appeal from an order which was to their benefit. *Kelley* v. *Kelley*, 253 Ark. 378, 486 S.W.2d 5 (1972). Rather, at the time this contempt arose, the attorney's remedy was to petition the Arkansas Supreme Court to review his conviction for contempt by writ of certiorari. *See, Frolic Footwear* v. *State*, 284 Ark. 487, 683 S.W.2d 611 (1985); *Williams* v. *Williams*, 12 Ark. App. 89, 671 S.W.2d 201 (1984). However, in *Frolic Footwear*, the Supreme Court held that, as of February 4, 1985, all criminal contempt cases were to be reviewed by appeal instead of certiorari. 284 Ark.

at 490. Therefore, the proper procedure for the review of a citation holding a party's attorney in criminal contempt is for the attorney, not the party, to appeal the conviction. In the case at bar, neither a petition for a writ of certiorari nor an appeal was filed on behalf of the attorney. Therefore, we will not consider the validity of the trial court's ruling. *See, Williams,* 12 Ark. App. at 93.

Because we reverse the trial court's decision regarding the guardianship, we need not reach the issue raised by the appellant concerning the trial judge's failure to recuse.

Reversed and remanded.