Carl J. FREEMAN *v.* Bruce RUSHTON
and Beth Rushton

04-138                                      201 S.W.3d 923

Supreme Court of Arkansas
Opinion delivered January 27, 2005

*David P. Price*, for appellant.

*David W. Talley, Jr.*, for appellee.

J IM GUNTER, Justice. Appellant, Carl J. Freeman, appeals the order of the Columbia County Circuit Court appointing appellees, Bruce and Beth Rushton, as guardians of the person and estate of their grandson, Alec.[1] Appellant argues only one point for reversal: the circuit court erred as a matter of law by granting custody to the child's maternal grandparents instead of to him, the fit biological father. We affirm.

Alec was born on July 20, 1999. His mother, Jill Rushton, was never married to appellant. Jill and Alec lived with Jill's

---

[1] This appeal was certified to us from the court of appeals pursuant to Ark. R. Sup. Ct. 1-2(b)(5) and (6), as it involves significant issues needing clarification or development of the law.

parents, the appellees, after Alec's birth. As a result of Jill's request for Medicaid benefits, the State filed a paternity action against appellant in 2000. A judgment of paternity declaring appellant to be the child's father was entered on February 8, 2001. Appellant was ordered to pay child support and was also awarded visitation. Although he did not take advantage of extended summer visits granted to him by the court's visitation schedule, appellant otherwise has continued to pay support for and spend time with Alec as set forth in that order.

On February 23, 2003, Jill Rushton died from injuries she received in a car accident. The present guardianship case arose from that event. While Alec was visiting with appellant when the accident occurred, his home was still with the appellees. Appellant has never had custody of Alec. Four days after Jill's death, appellees filed a petition for appointment of guardianship over Alec following the guidelines set forth in Ark. Code Ann. § 28-65-205 (Repl. 2004). Appellant filed an answer and later a motion to dismiss, requesting the court to dismiss the petition and reunite him with his child. While appellant did not file a "petition for guardianship" as such, it appears clear from the record that he sought to obtain Alec by virtue of the natural-parent preference found both in Ark. Code Ann. § 28-65-204(a) and in our long-established caselaw. The circuit court recognized this in its opinion, stating that despite appellant's failure to file such a petition, it was nevertheless considering him to fill that role.

The circuit court granted appellees' petition establishing a guardianship over Alec, setting forth the following findings of fact: (1) Alec has lived with appellees since his birth; (2) appellees have been responsible for seeing to and providing for Alec's educational needs; (3) appellees have been responsible for Alec's medical needs; (4) appellees have been responsible for seeing that Alec receives religious instruction and attends church on a regular basis; (5) appellant is a fit person to have custody; however, he has never had any extended time with Alec; (6) at the time of the hearing, it had been only three months since Alec's mother's death; and (7) Alec is a minor, a guardianship is desirable to protect his needs, and appellees are qualified and suitable to act as his guardians. The court concluded that the key factor in determining guardianship is the best interest of the child and found that it was in Alec's best interest to continue to live and be raised in the home of his grandparents.

While the circuit court noted that Ark. Code Ann. § 28-65-204(a) grants preferential status to the parents of a child, it stated that this preference is only one factor the court must consider in determining who will be the most suitable guardian for the child. Relying on our decision in *Blunt v. Cartwright*, 342 Ark. 662, 30 S.W.3d 737 (2000), the opinion stated further that any inclination to appoint a parent or relative must be *subservient* to the principle that the child's best interest is of paramount consideration. We agree.

We review probate proceedings *de novo*, but we will not reverse the decision of the court unless it is clearly erroneous. *Blunt, supra; Amant v. Callahan*, 341 Ark. 857, 20 S.W.3d 896 (2000). When reviewing probate proceedings, we give due regard to the opportunity and superior position of the circuit judge to determine the credibility of the witnesses. *Id.*

Appellant argues that the circuit court's decision should be reversed, not because its findings of fact were clearly erroneous, but because the court erred as a matter of law in not following the natural-parent preference after finding that appellant was a fit parent. He argues that once a determination has been made in a guardianship proceeding that a parent is "fit," as a matter of law, the circuit court must appoint that fit parent as guardian over his or her child. While we will not set aside a trial court's findings of fact unless they are clearly erroneous, we do not afford the same deference to a trial court's conclusions of law. *Hartford Fire Ins. Co. v. Sauer*, 358 Ark. 89, 186 S.W.3d 229 (2004).

Before appointing a guardian, the circuit court must be satisfied that (1) the person from whom guardianship is sought is a minor or otherwise incapacitated; (2) a guardianship is desirable to protect the needs of that person; and (3) the person to be appointed guardian is qualified and suitable to act as such. Ark. Code Ann. § 28-65-210 (Repl. 2004). The natural-parent preference referred to by appellant derives both from our long-established caselaw in custody matters and from Ark. Code Ann. § 28-65-204(a). While the two preferences are similar, the preference at issue here is the statutory preference, Ark. Code Ann. § 28-65-204(a).

This case began when appellees filed a petition for guardianship. While appellant did not request guardianship in

either his answer or his motion to dismiss, but requested merely to be "reunited" with his child, the circuit court indicated that it was nevertheless considering him to fill the role of guardian. As this is not an initial-custody or modification-of-custody case, but a guardianship case, the parties are governed by the preference set forth in Ark. Code Ann. § 28-65-204(a). Subsection (a) states that "[t]he parents of an unmarried minor, or either of them, if qualified and, in the opinion of the court, suitable, shall be preferred over all others for appointment as guardian of the person." *Id.* Interpretation of a statute is a conclusion of law which we review *de novo. Hartford Fire Ins. Co., supra.*

While this statute, or its predecessor, has been the law since 1949, we have had very few opportunities to interpret it in the context of a parent versus a third party. The most recent case was *Blunt v. Cartwright*, 342 Ark. 662, 30 S.W.3d 737 (2000), relied upon by the circuit court in this case. The question in *Blunt* was whether guardianship of a child whose mother was killed in an amusement-park accident should lie with the maternal grandparents or the alleged biological father. While the parents were not married, and no paternity action had ever been filed, both the probate court and this court treated the appellant as the natural father for purposes of the case. The probate court appointed the maternal grandparents as permanent guardians, finding that appellant was "not suitable" to be the child's guardian. In affirming, we said that

> [p]referential status may be given to the natural parents of the child under Ark. Code Ann. § 28-65-204 (Supp. 1999). This preference, however, is but one factor that the probate court must consider in determining who will be the most suitable guardian for the child. *See Marsh,* 15 Ark. App. 272, 692 S.W.2d 270. Indeed, any inclination to appoint a parent or relative must be subservient to the principle that the child's best interest is of paramount consideration. *See Bennett,* 281 Ark. 414, 664 S.W.2d 476.

*Blunt, supra.*

Since we upheld the probate court's finding that the natural father in *Blunt* was not suitable, we did not go further in interpreting the statutory language. In this case, appellant argues that

because the circuit court found he was "fit," it must, consequently, appoint him as his son's guardian.[2] We disagree.

It is in the trial court's discretion to make a determination whether a parent is "qualified" and "suitable." *See* Ark. Code Ann. § 28-65-204(a). Assuming such a determination is made, however, the analysis does not end there. This statute does not mandate appointment. It merely states that such a parent "shall be preferred over all others for appointment as guardian." *Id.* We must assume that had the General Assembly intended to require appointment, it would have stated that a parent who is qualified and suitable shall be appointed as guardian. This statute does not do that. This statute merely grants a preference and does not negate the trial judge's discretion to weigh all of the facts before him and to determine the credibility of the witnesses in making his determination of guardianship.

While this statute grants a preference to a parent, "qualified," "suitable," and "preferred" also incorporate our long-stated principle that the child's best interest is of paramount consideration, both in custody and in guardianship situations.[3] *Blunt, supra*; *Crosser v. Henson*, 357 Ark. 635, 187 S.W.3d 848 (2004) (Holding that while there is a natural-parent preference in custody cases, the preference is not absolute. The controlling factor is the best interests of the child. "Determining whether the child is to be better off with one party versus another is precisely what the court should decide. The natural-parent preference and the fitness of that parent are not the absolute determinants in custody-modification matters, as our case law makes clear."); *Henry v. Janes*, 222 Ark. 89, 257 S.W.2d 285 (1953) (court determined in considering the best interest of the child, the natural-parent preference was overcome and changed custody from the natural father to the great-aunt and great-uncle).

Appellant cites *Stamps v. Rawlins*, 297 Ark. 370, 761 S.W.2d 933 (1988), for his argument that the natural-parent

---

[2] While the circuit court made a specific finding that the appellees were qualified and suitable, it made no such finding about appellant.

[3] We note also that in *Linder v. Linder*, 348 Ark. 322, 72 S.W.3d 841 (2002), we recognized that a parent's rights do not spring from a "bare biological connection" to the child, but must be born of a relationship to a child demonstrated over time. *Michael H. v. Gerald D.*, 491 U.S. 110 (1989).

preference must prevail unless it is established that the natural parent is unfit. First, that case is a modification-of-custody case, not a guardianship case, governed by the case-law preference, found in not the statutory preference found in Ark. Code Ann. § 28-65-204(a). Furthermore, in *Stamps*, custody of the child had already been awarded to the natural mother, and the stepfather was attempting to have the custody changed to him. The trial court found that the mother was a fit and proper person for custody, but nevertheless changed custody of the child to the stepfather. We reversed. There had been no finding of a change in circumstances warranting a change in custody. Finally, in *Stamps,* granting custody would deprive the natural parent of custody, something she already had. In this case, appellant has never had custody. We also reiterated in *Stamps* that the preference is based on the child's best interests.

In this case, the circuit court carefully considered the evidence and found that in spite of the statutory preference, it was in Alec's best interest to remain with his maternal grandparents. After a *de novo* review of the record, we cannot say that the circuit court's decision was clearly erroneous. We affirm.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING DELIVERED MARCH 10, 2005

PER CURIAM. Rehearing is denied.

TOM GLAZE, Justice, dissenting. Carl J. Freeman files a petition for rehearing, and argues our court has made a mistake of law. At the very least, I believe this court should clarify its opinion to explain why, under *Troxell v. Granville*, 530 U.S. 57 (2000), and *Linder v. Linder*, 348 Ark. 322, 72 S.W.3d 841 (2002), Freeman, being the only living fit parent, was not given the legal presumption to which he was entitled that he was acting in his son's best interest. As we said in *Linder*, to overcome the presumption in the parent's favor, there must be some other factor, such as harm to the child or custodial unfitness, that justifies state interference. So long as Freeman is fit to care for his son on a day-to-day basis, the Fourteenth Amendment right attaches. The State cannot interfere with a compelling interest, and, in making such analysis, the State must accord

special weight to Freeman's decision as long as he is a fit parent. Instead, this court, in its opinion, largely relied on *Blunt v. Cartwright*, 342 Ark. 662, 30 S.W.3d 737 (2000), which predates *Linder* and makes no refrence to *Troxell*.[1] Although the trial court and parties agreed that Freeman is a fit parent, this court's opinion places the burden on Freeman to show he is "suitable" even though, under relevant case law, he is indisputably found to be a fit parent who is presumed to be acting in his son's best interest. Again, our opinion in this case ignores the legal principle set out in *Troxell* and *Linder* by saying any inclination to appoint a parent or relative must be subservient to the child's best interest. Of course, as previously stated above, the proper analysis must commence with the presumption that Freeman was acting in his son's best interest; however, Freeman was not given the benefit of that presumption. Our court, therefore, cannot be assured that, if it had utilized the correct legal principles and analysis, the trial court would have ruled the way it did. Utilizing the proper analysis, that presumption may well be rebutted. It appears to me that Freeman's argument that the trial court erred as a matter of law is correct under the tenets established in *Troxell* and *Linder*. In my view, confusion exists in this case and we are the only ones who can alleviate that confusion — better now than later.

---

[1] The court's opinion only mentions the *Linder* case in a footnote, for the proposition that we recognize a parent's rights do not spring from a "bare biological connection" to the child, but must be born of a relationship to a child demonstrated over time. This proposition is found in *Michael H. v. Gerald D.*, 491 U.S. 110 (1989), but that rule hardly answers the issues now before our court.