Bryan K. SMITH *v.* Danny THOMAS

07-1170                                                    284 S.W.3d 476

Supreme Court of Arkansas
Opinion delivered May 15, 2008

---

*Sheila F. Campbell*, for appellant.

*Coplin & Heuer*, by: *Sam T. Heuer* and *Jocelyn A. Stotts*, for appellee.

ROBERT L. BROWN, Justice. Appellant Bryan K. Smith appeals from an order of the circuit court refusing to terminate the guardianship of Danny and Sandra Thomas for their grandson, B.S., who at the time of this writing is age nine. The court of appeals affirmed the circuit court's order. *See Smith v. Thomas*, 100 Ark. App. 195, 266 S.W.3d 226 (2007). This court then granted Smith's petition for review of that decision. We affirm the circuit court's order.

On July 31, 1998, Bryan K. Smith and Dandra Thomas had a child, B.S., out of wedlock. Smith and Dandra Thomas never lived together, and Smith never had custody of the child. B.S. resided with his mother, Dandra, until her untimely death on December 27, 2003. Immediately after her death, on December 31, 2003, Dandra's parents, Danny and Sandra Thomas, petitioned the Faulkner County Circuit Court to be appointed guardians of B.S. Smith counter-petitioned and also sought to be appointed

B.S.'s guardian. On January 20, 2004, the circuit court entered an order granting a permanent guardianship to the Thomases. The circuit judge found that it was in B.S.'s best interest to be with his grandparents, as Smith, a full-time college student, could not provide the stability that B.S. needed at that point in his life. Smith was ordered to pay $130 per month in child support to the Thomases and was awarded liberal visitation rights.

On April 13, 2004, the Thomases petitioned the circuit court to modify the order of guardianship regarding visitation. They alleged that Smith continued to cohabit with a woman to whom he was not married and that B.S. was subjected to this living arrangement during visitation. They further asserted that Smith refused to inform them of his whereabouts during his visitation with B.S. and that he exhibited poor parenting ability. They requested that Smith be ordered to take parenting classes and that his visitation rights be limited. Smith responded and filed a counter-motion to terminate the guardianship.

On June 15, 2004, the circuit judge held a hearing and refused to modify Smith's visitation award. The circuit judge did, however, order Smith to attend parenting classes and ordered both parties to attend mediation. During the hearing, the circuit judge ruled from the bench that Smith still could not provide the stability that B.S. needed because he was a full-time student. The judge ordered the mediation to improve the communication between the parties and said from the bench: "I want all four of you to submit to mediation because next summer I'm planning on a complete change of custody if things go the way they should, the way I'm expecting them to go." The circuit judge further told Smith: "I'm going to expect to see you ready by next summer to do what you have to do." The circuit judge noted that Smith would be graduating from college and marrying his fiancée the following summer.

On March 9, 2006, Smith again moved to terminate the guardianship and alleged that he had married his fiancée, that he had a stable income sufficient to provide for B.S. because of his employment with the Department of Human Services and as a bail bondsman, and that he had maintained continuous personal contact with B.S. for the past two years. On August 3, 2006, the circuit judge held a hearing. At the conclusion of the hearing, the judge found Smith "qualified" but also found some of his testimony "disturbing," such as his failure to complete an appropriate parenting class against the judge's clear direction and his inconsistent

statements regarding his smoking habit. The circuit judge was further concerned about a domestic battery incident that had previously occurred in Smith's home as well as his failure to finish college and his "bad feelings" toward the Thomases.

On August 17, 2006, the circuit judge entered an order denying Smith's motion to terminate the guardianship. Relying on *Freeman v. Rushton*, 360 Ark. 445, 202 S.W.3d 485 (2005), the circuit judge ruled that although Smith was the natural father of B.S., the legal preference to which he was entitled under the guardianship statute was subservient to the best interest of the child. The judge then found that it was in B.S.'s best interest to remain in the custody of the Thomases. The judge ordered that visitation would continue as previously ordered and that both parties would continue mediation in an attempt to resolve the issues associated with visitation.

Smith now asserts in this appeal that the circuit court clearly erred in denying his petition to terminate the Thomases' guardianship. He contends that pursuant to Arkansas law, a qualified parent should be preferred over all others for appointment as the child's guardian. *See* Ark. Code Ann. § 28-65-204 (Repl. 2004). He insists that because the circuit court found that he was qualified, he should have been given preference over the Thomases for the custody of B.S. He further contends that he has discharged his duties and obligations as B.S.'s father and that he has maintained constant contact and visitation with the child. He notes that he is gainfully employed and able to financially support B.S., and he insists that he completed a proper parenting course as previously ordered by the circuit court. He maintains that he has consistently participated in the life of B.S. and that he has demonstrated his ability to take his parenting responsibilities seriously. He admits that he has yet to obtain a college degree and that he smokes to relieve stress, but he insists that this does not make him unsuitable to be a guardian under the guardianship statute and that there has been no testimony about his lack of moral character that would prevent him from being a loving and stable custodial guardian to B.S.

The Thomases counter that they have provided for B.S. since his birth, that he has lived in their home for most of his life, and that they have been his primary caregivers throughout his life. They insist that Smith continues to exhibit poor parenting skills

and that he is not a proper role model for the child. They argue that his refusal to cooperate and communicate with them has created problems.

The Thomases further insist that Smith's inappropriate behavior toward them has negatively impacted B.S. and that Smith has improperly discussed the court proceedings with B.S. They underscore the fact that the circuit court found during the August 3, 2006 hearing that Smith was his own worst witness, as he misrepresented the truth and misstated the facts to better suit him. They argue, in addition, that Smith has never taken financial responsibility for B.S., that he has never demonstrated stability in his own life, and that he has been insensitive to creating a stable and normal environment for B.S. For example, they point to the fact that Smith often leaves B.S. in the care of Smith's sixteen-year-old nephew during visitation. They insist that the best-interest-of-the-child standard is the proper standard to apply in guardianship-termination proceedings and that the circuit judge correctly applied that standard in allowing B.S. to remain in their custody.

When we grant a petition for review, we treat the appeal as if it had been originally filed in this court. *See Cedar Chem. Co. v. Knight*, 372 Ark. 233, 273 S.W.3d 473 (2008).

Our standard of review in probate proceedings is clear:

> We review probate proceedings de novo, but we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. When reviewing the proceedings, we give due regard to the opportunity and superior position of the probate judge to determine the credibility of the witnesses.

*Devine v. Martens*, 371 Ark. 60, 65, 263 S.W.3d 515, 520 (2007) (internal citations omitted).

Pursuant to our Guardianship Code, before appointing a guardian, the circuit court must determine: (1) the person for whom a guardian is sought is either a minor or otherwise incapacitated; (2) a guardianship is desirable to protect the interests and needs of the incapacitated person; and (3) the person to be appointed as guardian is qualified and suitable to act as such. Ark.

Code Ann. § 28-65-210 (Repl. 2004); *see also Devine v. Martens, supra; Freeman v. Rushton, supra; Blunt v. Cartwright,* 342 Ark. 662, 30 S.W.3d 737 (2000).

This court has also said that "[w]here the incapacitated person is a minor, the key factor in determining guardianship is the best interests of the child." *Devine,* 371 Ark. at 71, 263 S.W.3d at 523; *Blunt,* 342 Ark. at 669, 30 S.W.3d at 741. Our Guardianship Code specifically provides: "The parents of an unmarried minor, or either of them, if qualified and, in the opinion of the court, suitable, shall be preferred over all others for appointment as guardian of the person." Ark. Code Ann. § 28-65-204(a) (Repl. 2004).

Indeed, "[t]he [guardianship] law prefers a parent over a grandparent or other third person unless the parent is proved to be incompetent or unfit." *Devine,* 371 Ark. at 71, 263 S.W.3d at 523. We have said, however, that this preference, "is but one factor that the probate court must consider in determining who will be the most suitable guardian for the child." *Id.; Blunt,* 342 Ark. at 669, 30 S.W.3d at 741. We have further said that "any inclination to appoint a parent or relative [as guardian] must be subservient to the principle that the child's interest is of paramount consideration." *Blunt,* 342 Ark. at 669, 30 S.W.3d at 741. Finally, we have made it clear that we equate a petition to terminate a guardianship to a change of child custody among natural parents. *See, e.g., Crosser v. Henson,* 357 Ark. 635, 187 S.W.3d 848 (2004); *In re Guardianship of Markham,* 32 Ark. App. 46, 795 S.W.2d 931 (1990).

In making its ruling, the circuit judge relied heavily on *Freeman, supra.* Indeed, the facts of that case are strikingly similar to those presented here. In *Freeman,* the appellant had a child out of wedlock with the appellees' daughter. The child lived with his mother and the appellees, the child's grandparents, after his birth. The appellant, who was the natural father, never had custody of the child, though he did pay child support and exercised some, but not all, of his visitation privileges. The child's mother was subsequently killed in an automobile accident, and the appellees filed a petition for appointment of guardianship over the child. The appellant sought to obtain custody of the child by virtue of the statutory natural-parent preference. The circuit court appointed the appellees as the child's guardians, finding that the child had lived with the appellees since birth, that the appellees had been responsible for meeting the child's educational and medical needs,

and that though the appellant was a qualified parent, he had never spent an extended amount of time with the child.

This court affirmed the circuit court's decision in *Freeman*, stating that the statutory preference is only one factor that the circuit court must consider in determining who would be the most suitable guardian for the child. We interpreted Ark. Code Ann. § 28-65-204(a) as follows:

> It is the trial court's discretion to make a determination whether a parent is "qualified" and "suitable." *See* Ark. Code Ann. § 28-65-204(a). Assuming such a determination is made, however, the analysis does not end there. This statute does not mandate appointment. It merely states that such a parent "shall be preferred over all others for appointment as guardian." *Id.* We must assume that had the General Assembly intended to require appointment, it would have stated that a parent who is qualified and suitable shall be appointed as guardian. This statute does not do that. This statute merely grants a preference and does not negate the trial judge's discretion to weigh all of the facts before him and to determine the credibility of the witnesses in making his determination of guardianship.

*Freeman*, 360 Ark. at 451, 202 S.W.3d at 488.

In sum, in *Freeman*, this court made it abundantly clear that in both custody and guardianship situations, the child's best interest is of paramount consideration, and the statutory natural-parent preference is one factor. However, that preference is ultimately subservient to what is in the best interest of the child. This principle has been recognized in other cases as well. *See, e.g., Crosser, supra* (natural-parent preference is not the absolute determinant in a termination-of-guardianship case, and the fact that the noncustodial parent was now qualified did not constitute a sufficient change in circumstances to warrant terminating the guardianship and taking custody of the child away from its grandparents); *Blunt v. Cartwright, supra* (statutory natural-parent preference does not automatically attach to a child's biological parent, and court refused to terminate guardianship in favor of grandparents where it found father unsuitable custodian); *In re Guardianship of Markham, supra* (the welfare of the child is the polestar in every child custody case, and though the natural parent is entitled to a legal preference, it is the natural parent's burden to show that

termination of a guardianship held by the child's aunt is in the best interest of the child).[1]

In this case, the circuit court ruled that it was in B.S.'s best interest to remain in the custody of the Thomases under the guardianship. Though the circuit judge found Smith to be qualified, she found that some of his testimony was not credible, and she was disturbed by his testimony regarding his smoking habit and a previous domestic-battery incident. The circuit judge acknowledged that Smith was entitled to a natural-parent preference under § 28-65-204(a) but ruled that the preference was subservient to B.S.'s best interest.[2] The circuit court weighed the evidence and found that it was in B.S.'s best interest to remain with the Thomases, with whom B.S. had lived for virtually all of his life and who had provided a caring and stable home for B.S. The circuit court's ruling was not clearly erroneous. Based on this court's previous decisions, the circuit court correctly ruled that the statutory natural-parent preference was subservient to the best interest of the child.

Smith argues for his second point on appeal that his due process rights were violated by the circuit court's refusal to terminate the guardianship and that he was deprived of the liberty interest to raise his child. It appears from the record that Smith failed to raise this issue to the circuit court. This court has repeatedly said that an appellant must raise an issue and make an argument to the circuit court for it to be preserved for appeal, even if the issue is constitutional in nature. *See, e.g., Strong v. State,* 372 Ark. 404, 277 S.W.3d 159 (2008). Accordingly, we do not address this issue.

Affirmed.

---

[1] This court acknowledges that the issue of who should be appointed as a child's guardian is a separate issue from that of grandparent visitation. Grandparent visitation is governed by a completely different statute under the Family Law Code. *See* Ark. Code Ann. § 9-13-103 (Repl. 2008).

[2] We disagree with the statement in the court of appeals' opinion in this case that because this case does not involve the initial selection of a guardian, the natural-parent preference in § 28-65-204(a) is inapplicable. The statute does not make that distinction; nor does this court. Though we affirm the court of appeals' ultimate decision, we repudiate that conclusion.