KAREN R. BAKER, Justice, concurring. I agree with the majority that this case must be reversed. However, because the majority employs a different analysis than I would, I concur. This appeal stems from the Arkansas County Circuit Court’s November 24, 2008 appointment of Donna and Larry Herring-ton, appellees, as guardians of S.H., their minor granddaughter. Tamera Troesken, appellant, is S.H.’s mother. Tamera initially consented to the appointment of guardianship, but on June 25, 2010 filed a petition to terminate the guardianship. On June 18, 2011, the circuit court denied Tamera’s petition. Tamera appealed and in In re Guardianship of S.H., 2012 Ark. 245, 15, 409 S.W.3d 307, 316, we reversed the circuit court holding: The application of Ark. Code Ann. § 28-65-401 in this instance violated Tamera’s constitutional right. A natural parent who has not been deemed unfit is entitled to the presumption that he or she is acting in the child’s best interest, even after consenting to a guardianship. Therefore, when a natural parent, who has not been deemed unfit and who has consented to a guardianship, files a petition to terminate that guardianship, that parent must put forth evidence that the guardianship is no longer necessary. Once the court is satisfied that the conditions necessitating the 11(iguardianship have been removed, the guardians shoulder the burden of rebutting the presumption that termination is in the child’s best interest. We remanded the case for the circuit court “to address Tamera’s petition in light of our holding.” Contrary to the position of the dissent, our holding in In Re S.H. I was not an invitation for the circuit court to reopen the proceedings and conduct additional hearings over an extended period of time. In Standridge v. Standridge, 304 Ark. 364, 368, 803 S.W.2d 496, 498(1991), we explained: Whatever was before this court, and is disposed of, is considered as finally settled. The inferior court is bound by the judgment or decree as the law of the case, and must carry it into execution according to the mandate. The inferior court cannot vary it for any other purpose than execution. It can give no other or further relief as to any matter decided. by the Supreme Court, even where there is error apparent; or in any manner intermeddle with it further than to execute the mandate, and settle such matters as have been remanded, not adjudicated, by the Supreme Court. We have consistently followed that rule. See Ferguson v. Green, 266 Ark. 556, 587 S.W.2d 18 (1979); Milsap v. Holland, 186 Ark. 895, 56 S.W.2d 578 (1933). Id., citing Fortenberry v. Frazier, 5 Ark. 200 (1843). In this case, the circuit court should have reconsidered its order and applied the correct constitutional standard to the case before it as directed in In Re S.H. I. However, upon remand, the parties returned to circuit court where the circuit court held three additional hearings: October 23, 2012, June 28, 2013, August 2, 2013. On September 23, 2013, the circuit court ultimately denied Tamera’s petition to terminate the guardianship. On October 3, 2013, Tamera filed a motion for amendment of findings, for reconsideration, and/or for new trial. On November 1, 2013, the circuit court held another hearing and on November 4, 2013 denied the motion. From those orders, Tamera appeals. |17We review probate proceedings de novo, but we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. See Thomas v. Avant, 370 Ark. 377, 260 S.W.3d 266 (2007). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. See Artman v. Hoy, 370 Ark. 131, 257 S.W.3d 864 (2007). When reviewing the proceedings, we give due regard to the opportunity and superior position of the probate judge to determine the credibility of the witnesses.[1] In its September 23, 2013 order, denying her petition, the circuit court held: After comparing the circumstances which existed at time the guardianship was granted and the circumstances which exist now, the court concludes that there has not been any material change. While the details may have changed in some respects, the conditions still indicate an unstable situation. The court therefore finds- that Tamera did not put forth evidence sufficient to satisfy the court that the conditions necessitating the guardianship have been removed. Even if Tamera had put forth satisfactory evidence that the conditions necessitating the guardianship had been removed, and considering the parental preference in Tamera’s favor, the court finds based on the evidence that the Herringtons have rebutted the presumption that termination of the guardianship is in S.H.’s best interest. With regard to guardianship, we have held that “Arkansas courts have long referred to guardianship cases as special proceedings. See, e.g., Nelson v. Cowling, 89 Ark. 334, 116 S.W. 890 (1909). Further, special proceedings are governed by statute. First Security Bank v. Estate of Leonard, 369 Ark. 213, 253 S.W.3d 434 (2007); In re Adoption of Baby Boy Martindale, 327 Ark. 685, 940 S.W.2d 491 (1997). Hetman v. Schwade, 2009 Ark. 302, at 9, 317 S.W.3d 559, 563.” Swenson v. Kane, 2014 Ark. 444, 447 S.W.3d 118. Guardianships are creatures of statute and exist only as defined by the statutes of the Probate Code. Likewise, guardianships are terminated as provided by statute. Id. The statute at issue, Ark. Code Ann. § 28-65-401, addresses the termination of guardianship and provides in pertinent part: (b) A guardianship may be terminated by court order after such notice as the court may require: [[Image here]] (3) If, for any other reason, the guardianship is no longer necessary or for the best interest of the ward. In interpreting this statute, we have held that fit parents do not relinquish their fundamental liberty interest in raising their children by consenting to a guardianship and are entitled to the Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) presumption in a proceeding to terminate that guardianship: A natural parent who has not been deemed unfit is entitled to the presumption that he or she is acting in the child’s best interest, even after consenting to a guardianship. Therefore, when a natural parent, who has not been deemed unfit and who has consented to a guardianship, files a petition to terminate that guardianship, that parent must put forth evidence that the guardianship is no longer necessary. Once the court is satisfied that the conditions necessitating the guardianship have been removed, the guardians shoulder the burden of rebutting the presumption that termination is in the child’s best interest. In Re S.H. I,409 S.W.3d at 316-17. Further, in our discussion regarding Troxel and a parent’s rights to establish and .terminate a guardianship, we cited with approval the Colorado Supreme Court’s analysis: |1t>An important characteristic of a guardianship by parental consent is that parents have exercised their fundamental right to place their child in the custody of another for purposes of furthering the child’s best interests. Failure to accord fit parents a presumption in favor of their decision to terminate a guardianship established by parental consent would penalize their initial decision to establish the guardianship and deter parents from invoking the guardianship laws as a means to care for the child while they address significant problems that could impair the parent-child relationship or the child’s development. In re D.I.S., 249 P.3d at 783 (internal citations omitted); see also In re Guardianship of D.J., 682 N.W.2d at 246; In re Guardianship of Reena D., 35 A.3d at 513-14. In Devine v. Martens, we expressed similar public-policy concerns. 371 Ark. 60, 74, 263 S.W.3d 515, 526 (2007) (“Just as the Arkansas Juvenile Code recognizes the efforts of parents in dependency-neglect actions to improve their homes and parenting skills, we should encourage and recognize such improvements by parents in guardianship actions.”). In Re S.H. I, 409 S.W.3d at 315-16. Accordingly, in In Re S.H. I, we ultimately set out the standard for the termination of a guardianship: (1) The parent must put forth evidence that the guardianship is no longer necessary and (2) once the court is satisfied that the conditions necessitating the guardianship have been removed, the guardians shoulder the burden of rebutting the presumption that termination is in the child’s best interest. In reviewing whether this standard for termination of guardianship was met here, we must determine, based on our standard of review, whether Tamera put forth evidence that the guardianship was no longer necessary. The record clearly demonstrates that she did. Tamera put forth evidence that the guardianship was no longer necessary, by revoking her consent to the guardianship. This withdrawal of consent to the guardianship sufficiently demonstrated that the guardianship was no longer necessary. A “fit parent,” like Tamera, is presumed to act in S.H.’s best interest. Thus, Tamera is presumed to have acted in S.H.’s best interest when she consented to the guardianship, and she is, likewise, 12npresumed to have acted in S.H.’s best interest when she revoked her consent to the guardianship. In the first hearing following our remand on Tamera’s petition to terminate the guardianship, in ruling on the Herring-ton’s motion to dismiss Tamera’s petition the circuit court stated: The charge of the Supreme Court in this case on remand was that the petitioner must go forward with evidence that the guardianship is no longer necessary. I believe that the petitioner, Ms. Troesken, ... has gone forward with evidence that the guardianship is no longer necessary. Without saying how strong that evidence is, I think the evidence has been submitted, so the motion will be denied. Yet, in its written opinion, the circuit court held that Tamera had not put forth evidence that the guardianship was no longer necessary. In this ruling, the circuit court clearly erred. Further, in finding that it was in not in S.H.’s best interest that the guardianship be terminated, the circuit court erred yet again. The Herringtons bore the burden of rebutting the presumption that termination was in S.H.’s best interest after Tamera had revoked her consent. However, the record demonstrates that although the circuit court’s order recited that the Herrington’s had rebutted the presumption that termination was in S.H.’s best interest; in truth, it is clear that the burden was placed on Tamera, the parent, to further show that termination was ■ warranted. Again, the statutory standard in Ark. Code Ann. § 28-65-401 to be .applied in termination of guardianship cases provides for termination of a guardianship upon either of two grounds, (1) that the guardianship is no longer necessary, or (2) for the best interest of the ward. In In Re S.H. I, we explained: The Arkansas General Assembly made clear that, in the case of original guardianship actions with respect to children, natural parents enjoy a preference in the law. Ark. Code Ann. § 28-65-204(a) (Repl. 2012). Once established, a guardianship may be terminated by court order after notice as required by the court where the guardianship is no longer necessary or for the best interest of the ward. Ark. Code Ann. § 28-65-401(b)(8); see also Graham v. Matheny, 2009 Ark. 481, 346 S.W.3d 273 (clarifying the standard for courts in guardianship-termination proceedings). In Re S.H. I, 409 S.W.3d at 312-13. In Graham v. Matheny, 2009 Ark. 481, 346 S.W.3d 273 we held: [T]hat analyzing [a] case under the change-of-circumstances standard as if the case were a child-custody matter is the wrong analysis to be performed by the circuit judge in [a] termination case and that the proper analysis should be done under the standard set out in section 28-65-401(b)(3). Id., 346 S.W.3d at 281. However, although clarifying the standard for termination of guardianship cases, the analysis in Matheny is being wrongly interpreted by the majority to indicate that the best interest of the ward is properly a part of the court’s consideration in determining whether a guardianship continues to be necessary. That is not the case. Instead, as was correctly noted in Matheny, the two bases upon which a guardianship may be terminated are in the disjunctive: [I]t is clear to this court that the standard to be applied in termination-of-guardianship cases has been fixed by the General Assembly in section 28-65-401(b)(3), and that standard is (1) whether the guardianship is no longer necessary, or (2) whether termination is in the best interest of the ward. The statutory standard is crafted in the disjunctive and is applicable to terminations involving wards who are adults and wards who are children. Id., 346 S.W.3d at 281. 122Thus, a guardianship may be terminated when it is no longer necessary. Additionally, a guardianship may be terminated when termination is in the ward’s best interest. The testimony at the hearings on remand all demonstrate that Tamera and the guardians have an acrimonious relationship at best. At the time of the hearing, Tamera had had another child with a man to whom she was not married and was presently involved in a approximately nine-month long relationship with a different man. Tamera is unemployed, attends school on-line, stays at home with her infant daughter, resides with her mother and is financially supported by various family members. However, there has never been a finding that Tamera is an unfit parent and the record in this case cannot support such a finding. Thus, as a fit parent, Tamera is presumed to have acted in S.H.’s best interest in revoking her consent to the guardianship. Therefore, Tamera demonstrated that the guardianship is no longer necessary and should be terminated. At that point, pursuant to our holding in In Re S.H. I., in order to rebut the presumption, the Herrington’s were required to shoulder the burden of proving that termination was not in S.H.’s best interest by showing that Tamera was an unfit parent and unsuitable to have custody of S.H. They failed to do so. Therefore, the circuit court erred in denying Tamera’s petition to terminate the guardianship. Finally, I must note the disturbing tendency in our precedents to conflate guard-ianships with custody cases. Guardian-ships are creatures of statute that are created by the Probate Code. They are governed wholly by statute and established by order of the probate court. Probate courts are courts of law, not equity. This inexcusable mingling of Inequitable principles is apparent in this court’s opinion in Fletcher v. Scorza, 2010 Ark. 64, 359 S.W.3d 413 (2010), where we said: It is within the circuit court’s discretion to make a determination as to whether a parent is qualified and suitable. See Freeman v. Rushton, 360 Ark. 445, 202 S.W.3d 485 (2005). Moreover, the natural-parent preference is but one factor that the circuit court must consider in determining who will be the most suitable guardian for the child. See Blunt [v. Cartwright, 342 Ark. 662, 30 S W 3d 737 (2000) ],.... Any inclination to appoint a parent or relative must be subservient to the principle that the child’s interest is of paramount consideration. See Blunt, supra. Id., 359 S.W.3d at 421 (emphasis added). Of course, the case of Blunt, predated the Supreme Court’s holding in Troxel, and Freeman v. Rushton, 360 Ark. 445, 202 S.W.3d 485 (2005) failed to even mention Troxelm holding that the inclination to appoint a parent or relative must be subservient to the child’s best interest and that the child’s best interest is of paramount consideration, both in custody and in guardianship situations.[2] However, Troxel held that: ... the Fourteenth Amendment’s Due Process Clause has a substantive component that “provides heightened protection against government interference with certain fundamental rights and liberty interests, ” Washington v. Glucksberg, 521 U.S. 702, 720 [117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) ], including parents’ fundamental right to make decisions concerning the care, custody, and control of their \Mchildren. There is a presumption that fit parents act in their children’s best interests, Parham v. J.R., 442 U.S. 584, 602 [99 S.Ct. 2493, 61 L.Ed.2d 101 (1979) ]; there is normally no reason for the State to inject itself into the private realm of the family to further question fit parents’ ability to make the best decisions regarding their children, see, e.g., Reno v. Flores, 501 [507] U.S. 292, 304 [113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) ]. Id., 530 U.S. 57 at 65, 120 S.Ct. 2054 (emphasis added). Further, in Linder v. Linder, 348 Ark. 322, 72 S.W.3d 841 (2002), a grandparent visitation case, this court held that to overcome the presumption in a parent’s favor, there must be some other factor, such as harm to the child or custodial unfitness, that justifies state interference. Likewise, to pass constitutional muster our guardianship statutes must recognize a parent’s fundamental right to make decisions concerning the care, custody and control of their children and the presumption that a fit parent acts in their child’s best interest. See id. The Fletcher court then further compounded its error in failing to recognize a parent’s fundamental rights, by referring to this court’s case of Freeman, and stating: In Freeman, we rejected Freeman’s argument that “the natural-parent preference must prevail unless it is established that the natural parent is unfit,” observing that “[Stamps v. Rawlins, 297 Ark. 370, 761 S.W.2d 933 (1988), relied on by Freeman,] is a modification-of-custody case, not a guardianship case, governed by the case-law preference, not the statutory preference found in Ark. Code Ann. § 28-65-204(a).” Id. at 451-52, 202 S.W.3d at 488. We, therefore, take this opportunity to clarify that the sole considerations in determining guardianship pursuant to Ark. Code Ann. § 28-65-204(a) are whether the natural parent is qualified and suitable and what is in the child’s best interest. To the extent that any of our prior cases suggest a standard of fitness or unfitness in guardianship proceedings involving the statutory natural-parent preference, we overrule them. Fletcher, 2010 Ark. 64, 359 S.W.3d 413 (emphasis added). 112r,Of course, as stated previously, Blunt predates Troxel, and Freeman does not even mention the presumption in favor of a fit parent. But, as Justice Glaze pointed out in his dissent in Freeman: [T]he proper analysis must commence with the presumption that Freeman was acting in his son’s best interest, however, Freeman was not given the benefit of that presumption: Our court, therefore, cannot be assured that, if it had utilized the correct legal principles and analysis the trial court would have ruled the way it did.... It appears to me that Freeman’s argument that the trial court erred as a matter of law is correct under the tenets established in Troxell [Trox-el ] and Finder. In my view, confusion exists in this case and we are the only ones who can alleviate that confusion— better now than later. Freeman v. Rushton, 360 Ark. at 452, 202 S.W.3d at 489, Glaze J., dissenting (emphasis added). Justice Glaze was correct, and the confusion has only gotten worse as evidenced by this court’s holding in Fletcher. However, Blunt, Freeman, and Fletcher all predate our holding in In Re S.H. I where we first recognized that Ark. Code Ann. § 28-65-401 is unconstitutional as applied to a fit parent. Earlier decisions are implicitly overruled by subsequent decisions to the contrary. Oldner v. Villines, 828 Ark. 296, 943 S.W.2d 574 (1997). While the dissent may, “shudder to think” that this court, “now having the vote” to basically overrule “without so stating” our holding in In Re S.H. I, this statement is as incorrect as it is inflammatory and hyperbolic. If this court were to conclude that the holding in In Re S.H. I misapplied the law, it is our duty to so hold. This is particularly true where, as here, we are dealing with a statutory infringement on a fundamental right that is subject to review under a strict scrutiny standard. See Finder. Therefore, the dissent should not “shudder to think” that this court will preform its duty and overrule any prior 12fiprecedent that is inconsistent with the constitutional guarantee of due process. However, despite the dissent’s baseless characterization, the majority does no such thing. While I reach my conclusions from a different analysis than that employed by the majority, I do agree with their conclusion that the circuit court in this case impermissibly required Tamera to prove a change of circumstánces in order to justify terminating the guardianship in direct violation of our holding in In Re S.H. I. For that reason alone, this case must be reversed. As for the dissent’s assertion that the proper course to take when the circuit court has committed error, in a case such as this, is to reverse and remand for further proceedings, I am, quite frankly, appalled. This is a probate case, a case at law, and we do not defer to the circuit court on matters of law; but, instead, review the case de novo on the record.[3] In this case, Tamera, a fit parent, has been struggling through five years of legal proceedings to regain cústody of her child. That the dissent could possibly believe that further proceedings would benefit anyone, especially S.H., defies both logic and common sense. In this regard, I again quote Justice Glaze’s wisdom from his dissent in Freeman, ^“confusion exists in this case and we are the only ones who can alleviate that confusion — better now than later.” Hart, J., joins. . However, contrary to the dissent's position, as an appellate court, we must review the probate court’s findings. The probate court's findings are not insulated from review, but rather are afforded due deference upon review. Without elaboration, the dissent only states that it "simply cannot say that the circuit court clearly erred in its decision, based on my review of the record and the circuit court’s findings under our standard of review." . This language, referring to "the child’s best interest” seems to be at the root of the confusion surrounding the proper standard to be applied in guardianship cases. First, it is incorrect, because the statute references only "the ward's best interest.” Second, it appears to be easily confused with the "best interest of the child” analysis used in domestic relations cases. Unfortunately, both Graham and In Re S.H. I use the term "best interest of the child.” However, a careful reading of both of these cases shows that the intended meaning is that a guardianship is necessary where the parent is unfit, or where some other harm to the ward would result if the guardianship were terminated. Certainly, any particular guardianship may be terminated if termination is in the ward’s best interest, even if guardianship is still necessary. . In this regard, both the majority and the dissent err in citing to Ingle v. Ark. Dep’t of Human Servs., 2014 Ark. 53, 431 S.W.3d 303. Ingle was a juvenile case, sounding in equity, in which the circuit court maintained continuing jurisdiction. Thus, in Ingle, a new petition could-be filed in the case encompassing circumstances that had arisen following the entry of the previous order, which we reversed. Yet, even in equity, the moving party must show a material change in circumstances has transpired since the time of the previous order. See generally, Jones v. Jones, 326 Ark. 481, 931 S.W.2d 767 (1996). In In re S.H. I, a probate case, there was no continuing jurisdiction. The order at issue in that case was the order denying Tamera's initial petition to terminate the guardianship. We reversed that order and remanded the case for the circuit court to reconsider its ruling and apply the correct constitutional standard.