2011 Ark. App. 74

**Rhodis L. SMITH, Sr., Appellant**

**v.**

**Hershel LOVELACE and Venita Lovelace, Appellees.**

**No. CA 10–406.**

Court of Appeals of Arkansas.

Feb. 2, 2011.

Rehearing Denied March 16, 2011.

---

Andrew D. Ballard, North Little Rock, for appellant.

Phillip Allan McGough, North Little Rock, for appellee.

ROBERT J. GLADWIN, Judge.

On December 31, 2009, the Pulaski County Circuit Court issued a permanent guardianship order in the Matter of the Guardianship of Marc A. Rice, Jr., and appellant Rhodis L. Smith seeks to have that order reversed. He contends that the trial court erred (1) in finding that it was in the child's best interest that appellees Hershel Lovelace and Venita Lovelace be appointed guardians; (2) in applying the parent preference found in Arkansas Code Annotated section 28–65–204(a) (Repl. 2004); and (3) in failing to recognize appellant's preferential status provided for by statute. We affirm the trial court's order.

Appellant filed a guardianship petition seeking his appointment as guardian of his grandchild, Marc A. Rice, Jr., born January 6, 2008, when his daughter Lamondra Philton Smith, the child's mother, died.[1] Appellees, the paternal aunt and uncle of the child, filed a motion to intervene, which was granted. Appellees then filed a competing petition for guardianship of the child.

At the hearing held on August 12, 2009, the trial court took testimony from appellant and appellees. Appellant testified that he lived in a two-bedroom house and that his daughter sleeps in one bedroom, his grandson sleeps in the front on a couch, and that the minor child sleeps in a baby pen in his bedroom. He testified that he was trying to buy another house, but the purchase had not taken place at the time of the hearing.

On cross-examination, appellant admitted that he was fired from his job as a State Trooper because of checks "that bounced." He explained that he had a felony warrant issued for him and that, ultimately, he left the Arkansas State Police. Appellant testified that he thought Mark Rice, Sr., was the child's father. He also admitted that Rice, Sr., was involved with the baby, although he had concerns about Rice, Sr.'s criminal record and his living in a rehabilitation center.

Appellee Venita Lovelace testified that she and her husband lived in a five-bedroom, 3,300 square-foot house with her three children. She stated that there was a bedroom available for the minor child. She testified that she worked for the Postal Service and that they had other sources of income—rental properties, two business

1.  Appellant was appointed guardian of Rhodis Lamar Smith, II, on July 1, 2009 (a corrected guardianship was entered on October 6, 2009). Rhodis Lamar Smith, II, is the thirteen-year-old half brother of Marc A. Rice, Jr.

buildings, and two houses. Venita Lovelace told the trial court that she and her husband could provide the minor child a stable environment with support from family, church members, and friends. Hershel Lovelace testified that he was disabled, stayed home during the day, and would be available to help with the minor child. He said that he was a pastor and that he and his wife could offer the child a Christian home and atmosphere.

A consent order was introduced that gave Rice, Sr., visitation with the child at appellant's home. However, Rice, Sr., did not file for guardianship, and, even though an order for paternity test had been filed, no order establishing paternity had been entered at the time of the guardianship hearing. Rice, Sr., admitted his past problems and stated that he was living in a chemical-free house and had been drug free for seven months. He testified that he was working and that his child would give him the strength to "[s]tep up to the plate and take care of [his] responsibilities." He testified that he was taking business and management courses at the University of Phoenix, that he worked as a cook at a nonprofit organization, and that he had recently started a lawn service. He speculated that he would have the money to buy a house next year. Rice, Sr., said that he was not financially able to care for his child and wanted appellees to take care of his son. He stated that when he had gone to visit with his son at appellant's house, there was alcohol use there.

The trial court ruled in pertinent part as follows:

6. Ark.Code Ann. § 28–65–204 provides, in part, that parents of the minor child are preferred over all others for appointment as guardian if the Court finds them qualified and suitable. The statute goes on to provide, in part, that the Court shall appoint as guardian the one most suitable who is willing to serve.

7. The father of Marc A. Rice, Jr., was present for the hearing testified [sic] that he wants the juvenile to be placed with his sister and brother-in law, Venita and Hershel Lovelace.

8. The child's best interest is of paramount consideration.

9. Permanent Guardianship is granted to Hershel and Venita Lovelace.

Appellant filed a motion for new trial, an amended motion for new trial, a motion to recall the guardianship letters, a motion for contempt, and a second amended motion for new trial, all of which were deemed denied because no ruling was issued from the circuit court. Appellant then filed a timely notice of appeal, and this appeal followed.

The applicable standard of review has been expressed by the Arkansas Supreme Court as follows:

This court reviews probate proceedings de novo on the record, but it will not reverse the decision of the circuit court unless it is clearly erroneous. In conducting our review, we give due regard to the opportunity and superior position of the trial judge to determine the credibility of the witnesses. Furthermore, while we will not overturn the probate judge's factual determinations unless they are clearly erroneous, we are free in a de novo review to reach a different result required by the law.

*Hetman v. Schwade*, 2009 Ark. 302, 4–5, 317 S.W.3d 559, 562 (citations omitted).

■ Arkansas Code Annotated section 28–65–210 (Repl.2004) provides

Before appointing a guardian, the court must be satisfied that:

(1) The person for whom a guardian is prayed is either a minor or otherwise incapacitated;

(2) A guardianship is desirable to protect the interests of the incapacitated person; and

(3) The person to be appointed guardian is qualified and suitable to act as such.

Where the incapacitated person is a minor, the key factor in determining guardianship is the best interest of the child. *See Blunt v. Cartwright,* 342 Ark. 662, 30 S.W.3d 737 (2000).

### 1. Best–Interest Analysis

■ Appellant contends that the trial court's finding, that it was in the child's best interest to have appellees as guardians, was clearly erroneous. He argues that the child was living with him prior to the mother's death. After her death, appellant contends that he stood *in loco parentis* and was the child's primary caretaker for eight months prior to the final hearing and a full year prior to the permanent guardianship order. *See Standridge v. Standridge,* 304 Ark. 364, 803 S.W.2d 496 (1991).

He argues that two witnesses, Naobie Green, Lamondra's best friend, and Bernice Graves, a Smith family friend, testified that appellant was doing a great job with the child. He points out that the child was less than a year old at the time of the final hearing and that appellee Venita Lovelace failed to testify that she loved the child during her direct testimony. She further stated that the child would be attending daycare. Appellant contends that appellees, who mentioned social-security benefits and insurance proceeds that the child might be entitled to, seemed more interested in a check and not in providing care for the child.

He contends that even though the trial court's order states that the child's best interest is the paramount consideration, the trial court never stated in the order that it would be in the child's best interest

that guardianship be awarded to appellees. Instead, appellant claims that the trial court failed to apply the preference found in Arkansas Code Annotated section 28–65–204(b)(4), which applies to blood relatives. He contends that the evidence before the trial court showed that he takes care of the child and is not concerned with the "frivolous extra-curricular[6] activities to do with the child." Therefore, he argues that the trial court should be reversed.

Appellees contend that the trial court's letter opinion is instructive on this issue and it states in pertinent part as follows:

> Testimony at the hearing indicated that at the time of the minor child's mother's death, she was living with Rhodis Smith with the infant, Marc Rice, Jr., and another son, Rhodis Smith, II. Mr. Smith testified that he is retired from the Arkansas State Police and has been taking care of Marc, Jr., and his half brother, Rhodis Smith, II. The Court has granted a guardianship to Mr. Smith over the ward, Rhodis Smith, II, who is thirteen years old. Another daughter of Mr. Smith, Yolanda, also lives in the home. Testimony from Marc Jr.'s maternal great-grandmother, Cloria Smith, indicated that she is available to help with Marc, Jr.
>
> Marc Rice, Sr., testified that he is living in a chem free house and has some seven months of sobriety. He is the father of Marc, Jr., and he testified that he wanted him to be with his sister, Venita Lovelace. Ms. Lovelace testified that she has a five-bedroom home and Marc, Jr., would have his own bedroom. Mr. Lovelace is disabled and could provide daily care of Marc, Jr. Further, the Lovelaces have a relationship with a day care located across the street from their home and Marc, Jr., could attend and have the opportunity of being around other children near his age. Ms. Love-

lace is employed five days a week but would be available to help care for Marc, Jr., in the evenings and on weekends. Testimony from other friends and family members on both sides was offered at the hearing.

Ark.Code Ann. § 28–65–204 provides, in part, that parents of the minor child are preferred over all others for appointment as guardian if the Court finds them qualified and suitable. In this case, Marc Rice, Sr., is making strides at becoming suitable in staying drug free and working. The statute goes on to provide, in part, that the Court shall appoint as guardian the one most suitable who is willing to serve. The standard remains, however, that the child's interest is of paramount consideration. *See Bennett v. McGough*, 281 Ark. 414, 664 S.W.2d 476 (1984); *Blunt v. Cartwright*, 342 Ark. 662, 30 S.W.3d 737 (2000).

Pursuant to appellees' argument and based upon the trial court's letter opinion, it is clear that the trial judge weighed all of the testimony and made her decision based upon her analysis of the testimony, witnesses, and facts presented. We cannot say that the trial court was |₇clearly erroneous in finding that it was in the child's best interest to have appellees appointed guardians over the minor child.

### 2. *Parent Preference*

▆ Appellant contends that the trial court erred when it applied the parent preference found in Arkansas Code Annotated section 28–65–204(a). Preferential status in a guardianship proceeding may be given to the natural parents of a child pursuant to Ark.Code Ann. § 28–65–204(a). *See Blunt, supra.* That section provides that "[t]he parents of an unmarried minor, or either of them, if qualified and, in the opinion of the court, suitable, shall be preferred over all others for appointment as guardian of the person." Ark.Code Ann. § 28–65–204(a). A plain reading of that section demonstrates that only a natural parent who is both qualified and, in the opinion of the circuit court, suitable, shall be preferred over all others to be the child's guardian; however, the natural-parent preference does not automatically attach to a child's natural parents. *See Blunt, supra.*

▆ It is within the trial court's discretion to make a determination as to whether a parent is qualified and suitable. *See Freeman v. Rushton*, 360 Ark. 445, 202 S.W.3d 485 (2005). Moreover, the natural-parent preference is but one factor that the circuit court must consider in determining who will be the most suitable guardian for the child. *See Blunt, supra.* Any inclination to appoint a parent or relative must be subservient to the principle that the child's interest is of paramount consideration. *Fletcher v. Scorza*, 2010 Ark. 64, 359 S.W.3d 413.

▆ Appellant argues that because the minor child was conceived outside of marriage and Rice, Sr., had not been adjudicated to be the father by paternity testing, as the DNA test|₈results were never made a part of the record, the statutory preference for natural parents should not have been applied by the trial court. The trial court noted that Rice, Sr., was not in a position to be guardian of the child at the time of the hearing. Appellant contends, therefore, that. the trial court found Rice, Sr., unfit, thus ending any preferential status he may have had under the statute.

Also, appellant contends that the statute does not confer on the parent a preference as to whom should be guardian. Appellant argues that the statute gives a preference to the natural parents of a minor, if they are qualified. Here, Rice, Sr., did not seek

guardianship of Marc Rice, Jr., and the trial court found him not to be qualified. Therefore, appellant argues that the trial court erred in applying the statutory preference for a parent here. Appellant also contends that the trial court erred in insinuating in its letter opinion that Rice, Sr., would be reunified with the child in the future. Appellant contends that it is contrary to the statute and case law to find that the purpose of a guardianship is reunification. Finally, appellant claims that if a preference is given to a parent's opinion concerning whom is appointed as guardian, then the trial court erred by not finding that the child's mother preferred that appellant be appointed guardian because she was living with appellant when she died.

Appellees argue, and we agree, that the lack-of-proof-of-paternity argument fails, as appellant testified at the hearing that he believed Rice, Sr., to be the child's father and that he allowed Rice, Sr., to pick up the child from his house. Further, the consent order allowed Rice, Sr., to visit with his son at appellant's house. Finally, Rice, Sr., testified that he was the child's father. In our de novo review of the record, we hold that, even though the preference statute was mentioned in the letter order, it is clear that the trial court considered all of the other facts and testimony to determine the best interest of the child.

### 3. *Arkansas Code Annotated section 28–65–204(b)(4)*

Arkansas Code Annotated section 28–65–204(b)(4) states that the court shall appoint as guardian of an incapacitated person the one most suitable who is willing to serve, giving due regard to the relationship by blood or marriage to the person for whom guardianship is sought. Appellant contends that he should be given preferential status under the statute, and because Rice, Sr., has not been adjudicated the natural father, then appellees should not be given preferential status, as there is no proof that they are related by blood to the child.

Appellees contend that the trial court correctly applied the preferential status concerning recognition of persons related by blood to the minor. Appellant testified that he thought Rice, Sr., was the father of the minor child, Rice, Sr., testified that he was the father, and visitation had been established for Rice, Sr., as the father. Appellee Venita Lovelace is Rice, Sr.'s, sister. Appellees argue that, pursuant to Arkansas Code Annotated section 28–9–212(a)(2) (Supp.2003), the minor child is related to appellee Venita Lovelace in the second degree. However, the preferential status for those related to the minor child by blood, just as the preferential status for parents, is subservient to the best-interest analysis performed by the trial court. Accordingly, we affirm the trial court's order.

Affirmed.

HOOFMAN and BROWN, JJ., agree.