2013 Ark. App. 181

**Jacqueline FURR, Appellant**

v.

**Anthony JAMES & Cathy James, Appellees.**

**No. CA 12–708.**

Court of Appeals of Arkansas.

March 13, 2013.

the contract was granted.

Evans & Evans Law Firm, Springdale, by: James E. Evans, Jr., for appellant.

Daniels, Woods, Snively & Atwell, LLP, by: Alanna M. Fairrell, for appellee Cathy James.

DAVID M. GLOVER, Judge.

Jacqueline Furr (formerly James) and Anthony James were divorced by decree entered April 17, 2009. They are the parents of J.J. and K.R., two minor children. Cathy James is the paternal grandmother of the two children. At the time of the divorce, custody of the two children was awarded to their father, Anthony, Cathy's son. Un January 11, 2012, Cathy petitioned to be appointed as temporary and permanent guardian of the children, alleging that neither parent was providing an appropriate home for the children. Temporary guardianship was granted to her the same day. On January 17, 2012, Jacqueline responded to the petition, she also counter-petitioned for guardianship. Then, on February 8, 2012, she filed a petition to modify custody. Both matters were consolidated for trial and, following an April 5, 2012 hearing, the trial court granted guardianship of the children to Cathy and denied Jacqueline's petitions to modify custody and award guardianship to her. As her sole point of appeal, Jacqueline contends that the "trial court clearly erred in appointing a guardian for the two minor children when there was a fit and natural mother seeking to obtain custody of her children [and] the court erred in failing to follow the natural-parent presumption." We affirm.

## Standard of Review

Our appellate courts review guardianship proceedings de novo, but we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Fletcher v. Scorza,* 2010 Ark. 64, 359 S.W.3d 413. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.* When reviewing the proceedings, we give due regard to the opportunity and superior position of the trial court to determine the credibility of the witnesses. *Id.* Moreover, in cases involving children, we afford even more deference to the trial court's findings because our appellate courts have made clear that " 'there is no other case in which the superior position, ability, and opportunity of the chancellor to observe the parties carries a greater weight than one involving the custody of minor children.' " *Ford v. Ford,* 347 Ark. 485, 491, 65 S.W.3d 432, 436 (2002) (quoting *Taylor v. Taylor,* 345 Ark. 300, 304, 47 S.W.3d 222, 224 (2001)). We give special deference to the superior position of the trial court to evaluate the witnesses, their testimony, and the child's best interest. *Brown v. Brown,* 2012 Ark. 89, 387 S.W.3d 159.

## Discussion

We approach our analysis of this case recognizing that it is complicated

somewhat by the alignment of pleadings, these proceedings were initiated by the paternal grandmother's petition for guardianship (asserting that neither her son nor Jacqueline should have custody of the children, and requesting that she be awarded guardianship over them); her petition was followed by Jacqueline's counterpetition and by Jacqueline's subsequent motion for change of custody, all of these petitions were consolidated for hearing. Because custody of the children was still with Anthony at the beginning of these proceedings, we start there for ease of discussion. A change in circumstances must be shown before a trial court may modify an order regarding child custody. *Jones v. Jones,* 2009 Ark. App. 571, 2009 WL 2877609. Here, it is undisputed that a change of circumstances had occurred between the award of custody to Anthony in 2009 and the April 5, 2012 consolidated hearing. No one challenges the trial court's finding that Anthony had become an unfit parent in the interim and could no longer maintain custody of the children.[1]

Once that determination was made, however, the trial court was not obligated to automatically switch custody of the children to Jacqueline because it was still faced with Cathy's petition for guardianship, Jacqueline's counterpetition for guardianship, and Jacqueline's motion for change of custody. When there has been a change of circumstances, the primary consideration for the trial court in awarding custody, or guardianship, of children remains the welfare and best interest of the children involved. *See, e.g., Fletcher, supra;* Freeman v. Rushton, 360 Ark. 445, 202 S.W.3d 485 (2005); *Hudson v. Hudson,* 2012 Ark. App. 308, 419 S.W.3d 34. Our appellate courts have regularly and often said that the child's best interest is the paramount consideration in any situation in which the trial court is deciding who should exercise care, custody, and control over the minor child. Further, while we always give due regard to the opportunity and superior position of the trial court to determine the credibility of the witnesses, *Fletcher, supra,* we have also repeatedly held that, in cases involving children, we afford even more deference to the trial court's evaluation of the witnesses, their testimony, and the best interest of the children. *Ford, supra.*

The testimony presented to the trial court in 2012 concerning Jacqueline's care of her two minor children came primarily from Cathy about her observations of the children upon their return to her from visitation periods spent with their mother. Her observations included the following, they smelled horrible, their hair was greasy and they had to be bathed immediately, when bathed, she noticed that they had numerous marks and bites, they were always scratching their heads and talking about flea bites, they had belt marks across their bottoms and burns on their faces, they acted extremely fearful and more aggressive, and they had issues sleeping through the night.

Jacqueline's primary argument is that the trial court did not find her to be unfit, and that without that finding, as a natural parent, she should have been given preference over Cathy in the guardianship proceedings. Our problem with her argument is that it does not accurately reflect our guardianship laws.

In *Fletcher, supra,* as here, the mother challenged the guardianship award premised on the idea that a natural parent must be proved unfit before a guardianship may be entered in favor of someone other than the natural parent. Our supreme court, in

---

1. A recitation of the evidence supporting Anthony's unfitness is not necessary.

*Fletcher, supra,* acknowledged that statements to that effect had been made in earlier cases, but then proceeded to reject that position, explaining that Arkansas Lode Annotated section 28–65–204(a) (the parental-preference guardianship statute) makes no mention of whether the natural parent is "fit" or "unfit," and that "[t]o the extent that any of our prior cases suggest a standard of fitness or unfitness in guardianship proceedings involving the statutory natural-parent preference, we overrule them." *Id.* It is clear to us that Jacqueline's fitness argument must fail in the face of *Fletcher.*

In *Fletcher,* our supreme court emphasized the importance of the children's best interest in determining guardianship.

Where the incapacitated person is a minor, the key factor in determining guardianship is the best interest of the child. Preferential status in a guardianship proceeding may be given to the natural parents of a child pursuant to Ark.Code Ann. § 28–65–204(a) (Repl. 2004). That section provides that "[t]he parents of an unmarried minor, or either of them, if qualified and, in the opinion of the court, suitable, shall be preferred over all others for appointment as guardian of the person. A plain reading of that section demonstrates that only a natural parent who is both qualified and, in the opinion of the circuit court, suitable, shall be preferred over all others to be the child's guardian, however, the natural-parent preference does not automatically attach to a child's natural parents.

It is within the circuit court's discretion to make a determination as to whether a parent is qualified and suitable. Moreover, *the natural-parent preference is but one factor that the circuit court must consider in determining who will be the most suitable guardian for the child. Any inclination to appoint a parent or relative must be subservient to the principle that the child's interest is of paramount consideration.*

2010 Ark. 64 at 11, 359 S.W.3d at 420 (emphasis added).

In short, the trial court had the paternal grandmother and the natural mother of these children before it, they were both seeking care and control of the children, and the trial court had to decide between the two. The trial court concluded that "the need for guardianship of the minor children exists and that the best interests of the minor children will be served by placing the custody, care, and control of the minor children with the Petitioner, Cathy James." The trial court then granted her guardianship of the minor children "until the need for the guardianship no longer exists. . . ." The trial court also expressly stated that it was not comfortable with Jacqueline having custody of the children. While the court chose not to address her fitness or unfitness, it clearly concluded that the best interest of the children called for the grandmother to be appointed their guardian until their mother could demonstrate that the guardianship was no longer necessary.

In examining this issue, we have also determined that our opinion in *Madison v. Osburn,* 2012 Ark. App. 212, 396 S.W.3d 264, which was decided after *Fletcher,* relied in part upon a fitness standard in a guardianship proceeding involving the statutory natural-parent preference. Though neither party here relied on *Madison,* we take this opportunity to overrule *Madison,* and any other of our prior cases, to the extent that they suggest a standard of fitness or unfitness is applicable in a third-party guardianship proceeding involving the statutory natural-parent preference.

Jacqueline's remaining argument generally appears to be a two-fold challenge to the trial court's appointment of Cathy as guardian of the minor children. The same judge presiding over the 2012 consolidated custody/guardianship hearing had earlier heard the divorce proceedings in 2009. In 2009, Jacqueline was having an affair with Lucas Furr while she was still married to Anthony, and she had fostered the relationship with Furr in the presence of her children. These facts and other evidence led to the original award of custody to Anthony. In the first prong of her argument, she now contends that, because she and Furr married on the same day that the divorce decree was entered, moved to Missouri and have lived there since that time, along with the child she has since had with Furr, she proved she had rectified the only conduct that resulted in her being denied custody at the conclusion of the divorce hearing in 2009. Her contention, however, ignores the other evidence that was presented at the divorce hearing. The trial court had, among other things, also found problems with the manner in which she supervised the medical and developmental needs of the children at that time.

In her second prong, she argues that in deciding the instant case, the trial court did not review the divorce proceedings and therefore could not compare the situation that existed in 2009 with what she presented to the court at the 2012 hearing. However, her position ignores the fact that the same judge heard both proceedings, and also that at the close of the 2012 hearing, the judge requested, and was given, a partial transcript from the divorce hearing that included testimony "of four individuals, including [Jacqueline]." If she did not think that the trial court was giving the transcript proper consideration as it was making its findings from the bench, the time to raise that issue was during the hearing or in posttrial proceedings. The record is devoid of any such challenge to the trial court by Jacqueline. At the close of evidence in the custody/guardianship hearing, the trial court noted that while Jacqueline had described her house, she had not given the court any indication of how she intended to rear the children and had not shown the court that her conduct had changed since 2009. While the trial court did not specifically repeat its concerns in 2009 about her supervision of the children's health and developmental needs, that can fairly be inferred from this comment. The trial court also emphasized that Jacqueline could return at any time and terminate the guardianship when she could prove to the court "what she did not prove today."

Following our de novo review of the record in this case, we are not left with a definite and firm conviction that the trial court erred in its award of guardianship to Cathy or in its denial of guardianship and custody to Jacqueline.

Affirmed.

GLADWIN, C.J., and PITTMAN, WALMSLEY, WYNNE, and BROWN, JJ., agree.