

Cite as 2014 Ark. App. 345

# ARKANSAS COURT OF APPEALS

DIVISION I

No. CV-13-452

| | | |
|---|---|---|
| | | **Opinion Delivered** June 4, 2014 |
| RHODIS SMITH | | |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, NINTH DIVISON |
| | | [NO. PR-2009-49] |
| V. | | |
| | | HONORABLE MARY SPENCER McGOWAN, JUDGE |
| VENITA LOVELACE and HERSCHEL LOVELACE | | |
| | APPELLEES | AFFIRMED |

## ROBERT J. GLADWIN, Chief Judge

Rhodis Smith appeals the Pulaski County Circuit Court's February 4, 2013 order denying his petition to have himself appointed guardian of his grandson (M.R., age 5), replacing the appellees Herschel and Venita Lovelace. On appeal, he contends that the circuit court clearly erred by denying his petition. We affirm.

### I. *Facts*

Smith's grandson, M.R., was placed under a guardianship order on December 31, 2009, wherein the Lovelaces, M.R.'s paternal aunt and uncle, were named as guardians. This order was the subject of an appeal and the resulting affirmation by this court on February 2, 2011. *Smith v. Lovelace*, 2011 Ark. App. 74, 380 S.W.3d 514. In that appeal, we considered Smith's argument that the circuit court's finding—that it was in M.R.'s best interest that the Lovelaces, as opposed to Smith, be appointed as guardians—was clearly erroneous. *Lovelace*,

2011 Ark. App. 74, at 5, 380 S.W.3d at 517. We further held that the statutory natural-parent preference was not determinative in the circuit court's decision and that preferential status for blood relatives, as well as parents, was subservient to the best-interest analysis performed by the circuit court. *Id*. at 8–9, 380 S.W.3d at 519.

On August 3, 2011, Smith filed a pleading entitled "Petition to Terminate Guardianship and Establish Guardianship in Paternal Grandparent," claiming that, at the time of the previous hearing and order granting guardianship, the putative and natural father, Marc Rice, had expressed a desire that guardianship of M.R. be granted to the Lovelaces, Rice's sister and her husband. Since the guardianship order had been filed, Rice died. Smith alleged that Rice's death was a material change in circumstances, and in addition to other circumstances to be presented at a hearing, it was in the child's best interest to be in the custody of his "closest blood relative, i.e., the Petitioner and maternal grandparent."

On November 18, 2011, the Lovelaces filed a motion for summary judgment arguing that none of Smith's pleadings alleged any new facts that would lead to overturning the circuit court's prior award of guardianship. Attached to the motion was a statement of material facts, which included the argument that Smith failed to argue anything other than to make statements that he was the minor's grandfather—an argument that the circuit court previously considered.

Smith responded, claiming that the law of the case did not apply in guardianship cases because the best interest of the child was always the issue. In his attached statement in opposition to the Lovelaces' statement, Smith claimed, "Since the entry of the order by this

court, the child has appeared less than stable, mentally and physically." The Lovelaces filed a motion to strike Smith's response to their summary-judgment motion, alleging that the response was not served in a timely manner in derogation of Arkansas Rule of Civil Procedure 56(c) (2012).

At the hearing, the circuit court discussed with the attorneys for both parties the history of the case and stated that there were issues of material fact, thus ruling on the summary-judgment motion; however, no order was filed to reflect its ruling denying the summary-judgment motion. The circuit court further made clear through colloquy with counsel that it considered the issue for hearing to be whether Rice's death affected the guardianship of M.R. by the Lovelaces. The circuit court also stated that it had heard Smith's argument that, "in essence, I was keeping the half brothers from being in the same physical home." "I've heard that argument already."

During Smith's testimony, the circuit court intervened when Smith began to testify regarding his deceased daughter's wishes regarding her sons. Smith said that his daughter asked him "to look over her sons." The circuit court stated as follows:

> Remember, that got decided. This Court decided it. It was then affirmed. The Supreme Court denied review. So, in law, that means those issues are dealt with. They've already—you've had the day in court. And the reason that you're back in here is because there was a—there was a change in the sense that Marc Rice died. But there's not a—a way—there's not a channel in law that you get to go back and revisit everything that's already been decided.

Smith continued to testify, stating that M.R.'s father had died and that the child needed to be with "his blood."

SLIP OPINION

A prolonged discussion with the circuit court followed the Lovelaces' motion to dismiss at the end of Smith's presentation of evidence. The circuit court reserved ruling on the motion pending testimony from one of the Lovelaces about the current circumstances in the home. At the end of the testimony, the circuit court gave both attorneys time to file posthearing briefs, granting permission for direct submission in letter-brief form.[1]

On February 4, 2013, the circuit court filed an order denying Smith's petition and stating as follows:

> Mr. Smith's current Petition is based on a change in circumstances because Marc Rice is now deceased. His argument is that he is the guardian of R.S. and the half brothers should be reared in the same household. Mr. Smith has visitation with M.R. every other weekend. . . . Mr. Smith also testified that he believes that it would be in M.R.'s best interest to live with him because "[M.R.] is my grandson by blood . . . I feel like children need to be with their blood relatives . . . I just feel like [M.R.] needs to be with his immediate family which is his bloodline, my bloodline."
>
> Ms. Lovelace testified that Mr. Smith exercises his visitation every other week but the Lovelaces have also invited Mr. Smith to M.R.'s birthday party and other events. However, he has never exercised these options. Further, Ms. Lovelace testified that R.S. has only visited with M.R. one time, and then, Mr. Smith called and told them R.S. had to go home.
>
> Ms. Lovelace also testified that when M.R. has been on medication for asthma and it is sent with M.R. to the Smiths, that none of the medication has been administered. Also, after a splint was placed on M.R.'s leg, M.R. was returned to the Lovelaces after

---

[1]On appeal, Smith moved to supplement the record in order to include the letter briefs, and this court allowed him fifteen days to do so. However, the circuit court's reporter filed an affidavit dated November 12, 2013, stating that she had prepared the official transcript of the proceedings in this case and that no exhibits or documents consisting of posttrial briefs were contained in the official transcript. She also stated that filings of pleadings occur in the circuit court clerk's office. A clerk's certificate dated November 12, 2013, states that the record on appeal is true and correct. The record does not contain any posttrial briefs.

SLIP OPINION

visiting with the Smiths and the splint was just in a "Kroger sack" and had been removed from M.R.'s leg.

Ms. Lovelace also testified that on occasion when M.R. was under the Smiths' care that he did not go to school because Mr. Smith took him to Memphis and once Mr. Smith failed to pick up M.R. from school on a Friday. Finally, the Court notes that M.R. has now been in the care and custody of the Lovelaces since 2009. A removal of M.R. would be disruptive to a child who no longer has either parent alive.

The circuit court's order concludes that it was in M.R.'s best interest to remain in the care of the Lovelaces as co-guardians. It is from this order that Smith appeals.

II. *Applicable Law*

In *Furr v. James*, 2013 Ark. App. 181, at 2, ___ S.W.3d ___, ___, this court set forth its standard of review as follows:

> Our appellate courts review guardianship proceedings de novo, but we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Fletcher v. Scorza*, 2010 Ark. 64, 359 S.W.3d 413. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.* When reviewing the proceedings, we give due regard to the opportunity and superior position of the circuitcourt to determine the credibility of the witnesses. *Id.* Moreover, in cases involving children, we afford even more deference to the circuitcourt's findings because our appellate courts have made clear that "'there is no other case in which the superior position, ability, and opportunity of the chancellor to observe the parties carries a greater weight than one involving the custody of minor children.'" *Ford v. Ford*, 347 Ark. 485, 491, 65 S.W.3d 432, 436 (2002) (quoting *Taylor v. Taylor*, 345 Ark. 300, 304, 47 S.W.3d 222, 224 (2001)). We give special deference to the superior position of the circuitcourt to evaluate the witnesses, their testimony, and the child's best interest. *Brown v. Brown*, 2012 Ark. 89, 387 S.W.3d 159.

In *Graham v. Matheny*, 2009 Ark. 481, at 14–15, 346 S.W.3d 273, 281, the Arkansas Supreme Court clarified the standard to be used in termination–of–guardianship cases:

> First, it is clear to this court that the standard to be applied in termination-of-guardianship cases has been fixed by the General Assembly in section 28-65-401(b)(3), and that standard is (1) whether the guardianship is no longer

5



necessary, or (2) whether termination is in the best interest of the ward. The statutory standard is crafted in the disjunctive and is applicable to terminations involving wards who are adults and wards who are children.

Second, when a guardianship has been established for a child, and a termination is sought, the court must first focus on whether, under current facts, the guardianship is still necessary. That, of course, is the first statutory standard.

Third, even if significant facts have changed relevant to the guardianship, . . . that does not automatically decide the issue of whether the guardianship of a child is still necessary under the first statutory standard. What is in the best interest of the child must always be examined under the first standard to determine whether the guardianship should be terminated. Best interest of the child is the paramount consideration in termination cases . . . .

Fourth, unlike an original guardianship action, when the guardianship of a child has been in effect for a period of time, the stability of the child's environment and how well the child is functioning in that environment become critical factors, in addition to other factors, in deciding the child's best interest under the statute.

Fifth, a change-of-custody analysis using the material-change-of-circumstances standard should not be done in termination-of-guardianship cases. Again, the proper standard has been fixed by the General Assembly in section 28-65-401(b)(3).

### III.  *Discussion and Conclusion*

Smith's sole point on appeal is that the circuit court erred when it failed to terminate the Lovelaces' guardianship and establish Smith as guardian. He concedes that the focal point in determining a guardianship should be the best interest of the minor child. Smith contends that the factors to be considered in making a best-interest determination are that (1) he is the closest-living blood relative of the child; (2) he has been determined to be fit by the circuit court in this and ancillary decisions; and (3) he is the guardian of the minor child's brother, R.S., II. He contends that the siblings, having lost their mother, need to be and grow together. Smith also argues that he could provide the child with stability, space in the

home, and educational opportunities. Therefore, he maintains that it is in the child's best interest to be with him, the maternal grandparent, and not with the paternal aunt and uncle. He argues that the circuit court disregarded Arkansas Code Annotated section 28-65-204 (Repl. 2012), which provides parental and blood or marriage relationships as preferences for guardians, and section 28-65-210, which requires that the guardian be qualified and suitable. He contends that it is logical to conclude that grandparents stand next in line to be guardians.

The problem with Smith's argument is that the circuit court considered his contentions when the original guardianship was established. *Lovelace*, *supra*. The circuit court recognized that Smith was properly before the court with his request for termination based upon the changed circumstance of Marc Rice's death. However, Smith did not make a compelling argument that the circuit court's finding—it was in the child's best interest to remain in the guardianship of the Lovelaces—was clearly erroneous. The circuit court considered the testimony of the current status of M.R.'s circumstances and made a determination regarding the child's best interest. We give special deference to the superior position of the circuit court to evaluate the witnesses, their testimony, and the child's best interest. *James*, *supra*. Keeping in mind the standard established in *Graham*, *supra*, and *James*, we cannot say that the circuit court's order was clearly erroneous.

Affirmed.

VAUGHT and BROWN, JJ., agree.

*Darrell F. Brown*, for appellant.

No response.