SLIP OPINION

Cite as 2015 Ark. App. 38

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-14-139

| | |
|---|---|
| IN THE MATTER OF THE GUARDIANSHIP OF W.L., A MINOR | **Opinion Delivered** January 28, 2015 |
| DAVID LINEHAM <br> APPELLANT | APPEAL FROM THE LOGAN COUNTY CIRCUIT COURT [NO. 42P PR-2009-98] |
| V. | HONORABLE DAVID H. MCCORMICK, JUDGE |
| SARAH RACHEL HYDE ET AL. <br> APPELLEES | AFFIRMED |

## RITA W. GRUBER, Judge

David Lineham appeals from the circuit court's order denying his petition to terminate a guardianship over his daughter, W.L. David argues on appeal that the circuit court clearly erred in refusing to terminate the guardianship and in allowing W.L.'s maternal grandparents to continue as guardians. We affirm the circuit court's order.

W.L. was born on March 31, 2008, to David Lineham and Sarah Hyde in Virginia. At the time, they were living with David's parents in Mount Vernon, Virginia. In July 2009, they moved into a nearby apartment in Alexandria, Virginia. W.L. also spent a considerable amount of time with Sarah's parents, appellees Anna and Dennis Hyde, who both lived and worked in the Washington D.C. area but also maintained a residence on their farm in Logan County, Arkansas.

The relationship between Sarah and David was tumultuous. Although there is some

dispute regarding the reasons a guardianship was sought, David and Sarah both signed consents allowing appellees to have a guardianship over W.L. on September 25, 2009. David and Sarah permanently ended their relationship on October 31, 2009, and the order granting the guardianship was entered on December 21, 2009. Shortly thereafter, appellees moved with W.L. to their farm in Logan County, where W.L. has continued to live with them.

On September 25, 2010, David married Danielle. On December 27, 2010, David filed a petition to terminate the guardianship over W.L. The circuit court held a hearing on January 25, 2012, and entered an order denying David's petition on April 9, 2012.[1] In its order, the court found that the guardianship continued to be necessary and that it was in the best interest of W.L. for appellees to remain as guardians. The court specifically stated that the guardianship was necessary to "maintain the normal parental responsibilities such as providing food, clothing and financial support, which [David] has not provided." The court also found that the evidence demonstrated "a lack of a meaningful relationship" between David and W.L. or between David's new wife Danielle and W.L. Testimony indicated that, as of the date of the hearing, David had visited W.L. in Arkansas only one time since initiation of the guardianship in 2009 and had provided no financial support for W.L. The circuit court awarded standard visitation to David. We refer to this order as the "first order."

David did not appeal from the first order denying his petition, but he immediately began exercising visitation, visiting W.L. in Arkansas on weekends and exercising his six-

---

[1]After the hearing but before the court entered its order, Sarah filed a motion to intervene, which the circuit court denied.

SLIP OPINION

week summer visitation with W.L. in Virginia. Evidence showed that David spent money traveling to Arkansas to visit W.L. and purchasing clothes and toys for her. He did not, however, provide any direct financial support to appellees. In October 2012, Sarah and David filed competing petitions to terminate the guardianship and in December 2012, they filed competing petitions for custody in the event the court terminated the guardianship. The petitions for custody were consolidated into the guardianship. The court held a hearing in August 2013. At the time of the hearing, Sarah was living in a trailer on her parents' farm with her new husband and their two-year-old son. David and Danielle lived in an apartment in Virginia.

The court continued the guardianship, making the following specific findings:

7. This court finds from its previous ruling that David Lineham was determined to be unfit, although specific wording to that effect was not used. Sarah Hyde has not had her fitness addressed in any prior proceedings.

8. The Court places upon both biological parents a duty to put forth proof that the conditions that necessitated the guardianship had been removed. If successful, the Guardians would then have the burden of rebutting the presumption that termination is in the minor child's best interest.

9. While the Court finds that both biological parents failed to present proof at the hearing on August 14th and 16th, 2013 as to what the conditions were at the time the guardianship was established, the Court will still examine the evidence to determine whether terminating the guardianship is in the best interest of the Ward.

10. After examination of the pleadings, documents, testimony, and all available evidence, the Court finds that Sarah Hyde is unfit and that it would not be in the Ward's best interest to terminate the guardianship and return the Ward to Sarah Hyde. Specific reasons supporting this determination may be found in the Court's letter opinion dated October 2, 2013, which was sent to all parties by facsimile transmission.

11. After examination of the pleadings, documents, testimony, and all available

evidence, the Court finds that David Lineham remains unfit as a parent. Specific reasons supporting this determination may be found in the Court's letter opinion dated October 2, 2013 which was sent to all parties by facsimile transmission.

12.    The Ward is 5½ years old and has lived with the Guardians since she was 5 months old. The Court believes that the testimony justifies the finding that termination of the guardianship would not be in the Ward's bests interest and that the guardianship should remain in place. Specific reasons supporting this determination may be found in the Court's letter opinion dated October 2, 2013 which was sent to all parties by facsimile transmission.

The court then dismissed David's and Sarah's petitions to terminate, ordered both to pay child support, continued David's standard visitation with W.L., and incorporated its attached letter opinion by reference. In its letter opinion, the court recited the applicable law and burdens of proof found in our supreme court's opinion *In re Guardianship of S.H.*, 2012 Ark. 245, 409 S.W.3d 307.

Our appellate courts review guardianship proceedings de novo, but we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Furr v. James*, 2013 Ark. App. 181, 427 S.W.3d 94. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.* When reviewing the proceedings, we give due regard to the opportunity and superior position of the trial court to determine the credibility of the witnesses. *Id.* Moreover, in cases involving children, we afford even more deference to the trial court's findings because there is no other case in which the superior position, ability, and opportunity of the court to observe the parties carries a greater weight than one involving the custody of minor children. *Ford v. Ford*, 347 Ark. 485, 491, 65 S.W.3d 432, 436 (2002).

On appeal, David argues that the circuit court's order refusing to terminate the

guardianship and allowing W.L.'s maternal grandparents to continue as guardians rather than allowing him, W.L.'s father, to have custody is clearly erroneous. He specifically challenges the court's determination that it had found him to be unfit in its first order; that he failed to present sufficient evidence that the guardianship was no longer necessary; and that appellees presented sufficient evidence to overcome the presumption that termination of the guardianship was in W.L.'s best interest.

We turn first to the governing law. Arkansas Code Annotated section 28-65-401(b)(3) (Supp. 2013) provides that a guardianship may be terminated by court order if "the guardianship is no longer necessary or for the best interest of the ward." In applying this statute, our supreme court has held that fit parents do not relinquish their fundamental liberty interest in raising their children by consenting to a guardianship and, thus, are entitled to the *Troxel* presumption in a proceeding to terminate that guardianship.[2] *In re Guardianship of S.H.*, 2012 Ark. 245, at 14, 409 S.W.3d 307, 316. Specifically, the court held as follows:

> A natural parent who has not been deemed unfit is entitled to the presumption that he or she is acting in the child's best interest, even after consenting to a guardianship. Therefore, when a natural parent, who has not been deemed unfit and who has consented to a guardianship, files a petition to terminate that guardianship, that parent must put forth evidence that the guardianship is no longer necessary. Once the court is satisfied that the conditions necessitating the guardianship have been removed, the guardians shoulder the burden of rebutting the presumption that termination is in the child's best interest.

*Id.* at 15, 409 S.W.3d at 316–17.

In order for the presumption to apply, a parent must not have been deemed unfit.

---

[2]*See Troxel v. Granville*, 530 U.S. 57, 68 (2000) (recognizing presumption that a fit parent acts in the best interest of his or her child).

David argues that the circuit court erred in finding that he had been found unfit in the court's first order. Although the court stated that it had previously found David to be unfit in its first order, the court did not rely on that finding and instead applied the law set forth in *In re Guardianship of S.H.* as if David were a fit parent. Indeed, in its letter opinion, the court reasoned that since it had not made a fitness determination regarding Sarah in its previous order,

> the best way to examine the evidence in this case is to give both biological parents the *Troxel* presumption that by seeking to terminate the guardianship of [W.L.] that they are acting in the best interest of the child. This places upon the biological parents a duty to then put forth proof that the conditions that necessitated the guardianship have been removed. Then, if that burden of proof is met, the guardians have the burden of rebutting the presumption that termination is in the child's best interest. Finally, if it is determined that the guardianship is no longer necessary, the court must address the issue of custody as between Sarah Hyde and David Lineham[.]

The court continued in its letter opinion, finding that neither Sarah nor David presented proof as to what the conditions were at the time the guardianship was established and thus they failed to put forth proof that the conditions necessitating the guardianship had been removed. Given the court's examination of the evidence treating David as a fit parent and its consequent decision to allow him to put forth evidence that the guardianship was no longer necessary, its determination that it had previously found David unfit in its first order does not cause its denial of David's petition to be clearly erroneous.

David next argues that the circuit court erred in finding that he did not put forth sufficient evidence that the guardianship was no longer necessary. In support of his argument, he points to testimony of one of the guardians, Dennis, who thought the conditions necessitating the guardianship had been removed. Dennis's testimony was made in response

to whether he thought his daughter, Sarah, was ready to parent W.L. Dennis did not oppose terminating the guardianship if Sarah were to be awarded custody. But he made it clear that he had concerns with David and thought that the guardianship was still necessary with regard to David. Anna testified similarly. Although there was no testimony regarding precisely what conditions necessitated the guardianship, the petition for guardianship stated with regard to David that "the father of the minor child does not provide support or income to the mother" and that the mother was without suitable income to support herself or the child. The petition also stated that the child did not have regular medical care or a "consistent and stable home, nourishment, and maintenance."

David testified that he could provide and was providing medical insurance and that his income was sufficient to support W.L. But the court noted that, in spite of his income, David was not providing and had never provided any direct financial support to the guardians for W.L. Despite appellees' request that he help them with some of W.L.'s medical bills, David provided no funds at all. David argues that no court order required him to pay child support, apparently indicating the court was wrong to consider his failure to support W.L. in its decision. The law in Arkansas has long been that a parent has a legal duty to support his child, regardless of the existence of a support order. *Fonken v. Fonken*, 334 Ark. 637, 642, 976 S.W.2d 952, 954 (1998); *see also McGee v. McGee*, 100 Ark. App. 1, 6, 262 S.W.3d 622, 626 (2007) (stating that child support is an obligation owed to the child and, even in the absence of a court order requiring a parent to support his or her minor child, a parent continues to have a legal and moral duty to do so). We hold that the circuit court's finding

on the issue of the continuing necessity for the guardianship is not clearly erroneous.

In spite of the circuit court's failure to find that the parties put forth sufficient evidence that the guardianship was no longer necessary, the court still examined the evidence to determine whether terminating the guardianship was in W.L.'s best interest. David argues that the court's finding that termination of the guardianship was not in W.L.'s best interest was clearly erroneous. In examining best interest, the court recognized that David had exercised his visitation during the year and a half before the hearing and that he had provided clothing and toys to W.L. The court also noted that he had married and that he was currently earning at least $5,000 per month. But the court was troubled by David's seeming inability to communicate or interact favorably with Sarah and W.L.'s guardians. The court pointed to testimony that when David attended W.L.'s kindergarten graduation, he and his mother refused to sit in seats with the guardians and Sarah and chose to remain in the back of the room. The court also noted that David's wife, Danielle, admitted to calling DHS on several occasions to make reports that were later determined to be unsubstantiated. Danielle also admitted to alerting authorities that Dennis was harboring a fugitive (Sarah) and making an anonymous call to Dennis's employer relaying the same information. Evidence at trial demonstrated that David blocked phone calls from Sarah and appellees when W.L. was in his custody. The court was troubled by another incident in which David had obtained medical care for W.L. while she was in his custody but he refused to respond to repeated requests from appellees to provide the medical records for W.L.'s medical file. He gave no reason for his refusal other than that he simply had not responded. Finally, the court noted

that there was a distinct difference in the attitude of David and the other parties while testifying. David seemed disinterested in anything Sarah had to say, and appellees testified that David was dismissive of them and would not communicate with them concerning issues affecting W.L. Finally, the court was troubled by an incident over Christmas visitation in which David lied to appellees regarding whether he was driving or flying with W.L. to Virginia. Because of bad weather, David drove with W.L. to Virginia, but he told W.L. to lie to appellees about it. Despite appellees' repeated phone calls, David refused to accept or return any phone calls from them for several days during this time. Although David denied these accusations, the court found Dennis's testimony more credible.

The court also recognized that W.L. was five-and-one-half years old and had lived with appellees since she was five months old. The court found that it was not in W.L.'s best interest to terminate the guardianship. Credibility of the witnesses is a matter for the circuit court and, in cases involving children, we afford even more deference to the trial court's findings because there is no other case in which the superior position, ability, and opportunity of the court to observe the parties carry a greater weight than one involving the custody of minor children. *Ford*, 347 Ark. at 491, 65 S.W.3d at 436. Having reviewing the record, we hold that the circuit court's decision was not clearly erroneous.

Affirmed.

KINARD and BROWN, JJ., agree.

*Taylor & Taylor Law Firm, P.A.*, by: *Andrew M. Taylor* and *Tasha C. Taylor*, for appellant.
*Clark & Murdoch, P.A.*, by: *Timothy W. Murdoch*, for appellee.